## ARCHER vs. HUBBELL.

Where a *bill of sale* was made by a tavern keeper of all his household furniture, &c., and on the same day the vendee executed a lease of the same property to a brother of the vendor, who at the time resided with the vendor as a hired man, and the vendor and the lessee continued to reside together, and the business of tavern keeping was continued, *it was held*, that the judge ought to have instructed the jury that if they believed the *lease* was real, and bona fide intended to put the lessee in possession of the property, and that he actually took possession of the same, and conducted the public house in which they were, then the sale of the vendee was valid, and he was entitled to recover damages against a sheriff who took the same by virtue of an execution against the vendor; but that if they believed that the lease was colourable, and that it was intended by the parties that the *vendor* should continue in the possession and enjoyment of the property, then the whole transaction was void, and the defendant was entitled to a verdict.

A new trial may be asked for on a *case* made, on the ground of the misdirection of the judge, although no exception is taken to the charge of the judge on the trial. (See note.)

THIS was an action of *trover*, tried at the Oneida circuit in October, 1828, before the Hon. NATHAN WILLIAMS, one of the circuit judges.

The property in question was taken by the defendant as a deputy sheriff of Oneida, by virtue of two executions against one Lester Smith, put into his hands, one on the 28th December, 1827, and the other on the 15th March, 1828. Lester Smith commenced keeping tavern in Manchester, Oneida

NEW-YORK,
May, 1830.

Archer
v.
Hubbell.

county, in April, 1827, with furniture which cost him about $800. On the 21st December, 1827, he executed a bill of sale of all his furniture, and some other articles of property to his brother-in-law, the plaintiff in this cause, an inventory being made of the property, and each article appraised, amounting in the whole to $473,11; the plaintiff being present at the house of Smith, and receiving the formal delivery of a silver spoon in the name of the whole property transferred. The residence of the plaintiff at the time was at Homer, in the county of Cortland. On the same day that he received the bill of sale he executed a lease of all the property transferred to him by the bill of sale, except a one horse pleasure sleigh, to Austin Smith, for the term of three months and ten days, reserving a rent of five dollars per month, and binding the lessee to pay for any article that he should convert to his own use or dispose of, at the price at which the same was appraised in the inventory annexed to the bill of sale, a copy of which was attached to the lease. Austin Smith is a brother of Lester Smith ; he came from Vermont in October, 1827, and worked for his brother Lester by the month at the rate of $20 per month, till the bill of sale was executed ; he was not present when the prices were fixed upon the articles included in the bill of sale, but said he believed they were fair; he read over the inventory, but did not compare it with the articles of property specified in it. After the lease was executed, Lester Smith and his family remained in the house; Austin Smith is an unmarried man ; and the business of tavern-keeping was continued. There was a contrariety of testimony as to who conducted the business after the 21st December, 1827, whether Lester or Austin Smith. About the last days of March, 1828, when the deputy was about to sell the property in question under the executions against Lester Smith, the whole or the principal part of it was carried off by Lester Smith, and conveyed to Sangersfield and Westmoreland and other places, and attempted to be secreted ; a portion of it, however, was found by the deputy and sold, and for the property thus sold, the action was brought. The plaintiff proved that he had become surety for Lester Smith for $300, money borrowed by

NEW-YORK,   the latter, which together with the interest, amounting in the
May, 1830.   whole to $315,17, he paid to the lender on the 22d December,

Archer      1827.   He also proved an account for merchandize sold
v.          Smith previous to the date of the sale, and for board furnish-
Hubbell.    ed him and his wife amounting to $132,60 : in opposition to
which claim, however, evidence was given tending to reduce
its amount.   Evidence was also given shewing that the prop-
erty specified in the inventory was under-valued.   The re-
moval of the property by Lester Smith was without the
knowledge, consent, or approbation of the plaintiff.   The
judge charged the jury, that a debtor has a right to prefer
one creditor to another ; that leaving property conveyed in
the hands of a vendor is not *conclusive* evidence of fraud in
the case of an absolute sale any more than in the case of a
*mortgage*, but that in both cases it is *prima facie* evidence,
and that it was the duty of the jury to enquire whether the
transaction was fair and bona fide, or whether it was design-
ed to defraud creditors ; that if they should find it to be a bo-
na fide sale for valuable consideration, then, although they
should believe that the lease to Austin Smith was colorable
only, and that the possession of the property remained sub-
stantially in Lester Smith, the vendor, still the bill of sale
would not, *for that reason alone,* be absolutely void ; that they
ought. however, to enquire whether the lease was real or
only colorable, as it was a circumstance which, in connexion
with many others, was entitled to considerable influence on
the case ; that the circumstance of the property being un-
dervalued was not conclusive evidence of fraud ; that the
manner of conducting the tavern after the transfer, and the
carrying away and secreting the property by Lester Smith,
ought not to operate to the prejudice of the plaintiff, unless
done with his knowledge or consent ; and that the plaintiff
was justifiable in permitting Lester Smith to retain in his
possession such articles of property as were necessary for
his family, after the same had been removed from the tavern,
he being a near connexion of the plaintiff.   Under this
charge the jury found a verdict for the plaintiff for $250
damages, which was now moved to be set aside.

*H. Denio & G. C. Bronson,* (attorney general,) for the NEW-YORK,
plaintiff.                                                    May, 1830.

*W. H. Maynard,* for the defendant.*

Archer
v.
Hubbell.

*By the Court,* SUTHERLAND, J.   The defendant moves for
a new trial on the ground of the mis-direction of the judge.
The only question in the cause was whether the bill of sale
from Lester Smith to the plaintiff of all his household furni-
ture, &c. was fraudulent and void against creditors.

It was satisfactorily shewn that Smith was indebted to Ar-
cher to about the amount of the property contained in the
bill of sale ; that Archer was present in the house where the
articles were when the bill of sale was executed, and took for-
mal possession of a part in the name of the whole ; and that
he on the same day executed a lease of the same property to
Austin Smith, a brother of Lester, who resided in the house ;
and the balance of evidence, I am inclined to think, is, that
the general impression in the neighborhood after the bill
of sale and lease, was that Austin Smith conducted the busi-
ness of the tavern, though Lester Smith and his family contin-
ued to reside in the house.   The acts of Lester Smith in sub-
sequently carrying away and attempting to secrete a portion
of the property were without the knowledge, consent or ap-
probation of the plaintiff.

If the lease to Austin Smith was colorable only, and he
did not in fact take possession of the goods and control the
establishment in which they were subsequent to the lease,
then I do not perceive upon what principle the sale to the
plaintiff can be sustained.   There was no agreement what-
ever between the vendor and the vendee, that the former
should retain the possession of the goods ; and though the
fact of such possession, without an agreement for the pur-

---

* In this case it was urged by the defendant's counsel that objections to the
charge of the judge could not be made on the argument, it not appearing by
the *case*, that the charge was *excepted* to on the trial.   In answer it was said
that such was the rule as applied to *bills of exceptions*, but not to *cases* which
were substituted in the place of reports of trials made by the judges, and
consequently every objection might be urged on a case, which heretofore
could be urged on a report made.

pose, may not be conclusive evidence of fraud, it is *prima facie* evidence, and the plaintiff is bound to repel it; and, in order to repel it, it is not sufficient to shew that a full consideration was paid for the goods. The plaintiff must also shew some reason, which the court can approve, for leaving the goods in the possession of the vendor.

The established doctrine of this court is, that a voluntary sale of chattels, with an agreement that the vendor may keep possession, is, *except in special cases and for special reasons to be shewn to and approved of by the court,* fraudulent and void as against creditors. (*Sturtevant* v. *Ballard*, 9 Johns. Rep. 337. *Bissell* v. *Hopkins*, 3 Cowen, 166. *Jennings* v. *Carter*, 2 Wendell, 446.) All the authorities will be found collected in those cases. (8 Johns. R. 451. 2 Cowen, 432.) No special reasons are shewn in this case, nor does it fall within any of the established exceptions to the general rule. If the possession is admitted to have remained in Lester Smith, (as it must be if the lease to Austin Smith was fictitious and colorable only,) then it is a bald case of a sale of chattels to a creditor for a valuable consideration, the vendor retaining possession without any special cause or reason whatever to account for it. Such a transaction never has been held valid since the statute of Elizabeth.

I think the judge should have charged the jury, that if they believed the lease to Austin Smith was real and *bona fide* intended to put him in the possession of the goods, &c. and that he actually took possession of the same and conducted the public house in which they were, then the sale to the plaintiff was valid, and he was entitled to recover; but that if they believed that such lease was colorable, and that it was intended by the parties that Lester Smith should continue in the possession and enjoyment of the property, then the whole transaction was void, and the defendant was entitled to a verdict.

New trial granted.