ALBANY,
January, 1838.

Stevens
v.
Fisher.

New trial denied.

---

## STEVENS & MUNN vs. FISHER & WHITMORE.

A new trial will be granted although the jury have passed upon a question of fraud, where the inquiry is as to the validity of a sale of personal property under the statute relative to fraudulent conveyances.

Although the statute declares that the question of fraudulent intent, in all cases arising under it, shall be deemed a question of fact and not of law, it is the duty of the court to direct a verdict in favor of the creditor alleging fraud against a party setting up a sale of goods and chattels unaccompanied by an immediate delivery, not followed by an actual and continued change of possession of the things sold, and where a satisfactory explanation is not given for a non-compliance with the requirements of the statute. The power of the jury to pass upon the fraudulent intent does not extend to such a case; it applies only to cases where fraud is alleged notwithstanding that there has been a change of possession.

The jury may pass upon the explanation offered for a non-compliance with the requirements of the statute when submitted to them by the court; but it is the duty of the court in the first instance to pass upon the relevancy and materiality of the facts offered in evidence and in its discretion to receive or reject the same; and when evidence has already been received which in the opinion of the court is not competent, to instruct the jury to disregard it.

If the jury, by their verdict pronounce a sale to be fair and valid, which by the very terms of the statute is a naked fraud, it is the duty of the court to grant a new trial.

THIS was an action of *trover*, tried at the Tioga circuit in November, 1835, before the Hon. ROBERT MONELL, one of the circuit judges.

ALBANY,     The defendants, by virtue of an execution against Icha-
January, 1838. bod West, issued on a judgment in their favor obtained in
Stevens     January, 1834, sold a mare, a colt and a waggon, for the
v.          doing of which this action was brought.  The plaintiffs, to
Fisher.     show title to the property, produced a *bill of sale*, bearing
date 19th October, 1830, executed to them by West, where-
by, for the consideration of $72,10, West transferred to
them, *absolutely*, one horse, one mare, a two-horse waggon
and harness for the same.  At the time of the execution of
this bill of sale, West was indebted to the plaintiffs in the sum
mentioned in the bill of sale, and owed no other debts.  The
value of the property transferred was $210.  Although the
bill of sale was absolute on its face, it was understood be-
tween the parties that West should have the right to redeem
the property, without any time being specified within which
the redemption should take place.  A formal delivery of the
property took place, but West continued to use it after the
bill of sale as he had done before, calling it his property, but
informed several persons of the plaintiff's claim upon it.
He was a teamster and did much labor for the plaintiffs,
who were merchants, and from time to time supplied him
with such articles as he wanted for himself and family, and
with provender for the horses, charging him with such ad-
vances, and crediting him for his labor.  In August, 1832, the
balance due the plaintiffs being about $110, West executed
a further bill of sale to them of the *colt*, as additional secu-
rity.  At this time he was embarrassed in his circumstances.
A formal delivery was made of the colt also, which remain-
ed with the plaintiffs a few weeks, when it was taken home
by West and kept at his expense.  This bill of sale, although
*absolute* in its terms, was subject to the same right of re-
demption as the property included in the first bill of sale.
Instead, however, of the indebtedness to the plaintiffs being
reduced, the account against West was constantly accumu-
lating, so that at the time of the levy of the defendants' ex-
ecution, he was indebted to the plaintiffs about $250.  He
testified that in his dealings with the plaintiffs there was no
design to defraud his creditors.

The judge charged the jury that the question for them to decide was, whether the conveyance of the property in question should be deemed fraudulent and void as against the defendants, who were judgment creditors of West. He remarked that the question of fraud in the conveyance of personal property had been much agitated in the courts; that previous to the revised statutes, fraud in such cases had been deemed a *question of law* to be decided by the *courts*, and the courts had adjudged that *possession continuing in the vendor*, was evidence of fraud as against creditors, but to this rule it had been found necessary to make many exceptions. The revised statutes made fraud a *question of fact* to be decided by the *jury*, at the same time, however, enacting that all conveyances of personal property not accompanied by an immediate and continued change of possession, should be deemed fraudulent as against creditors, and should be *conclusive evidence* of fraud, unless it were shown affirmatively, on the part of the persons claiming under the sale, that it was made in good faith. That it was not enough for the plaintiffs here to show that the sale to them was upon good consideration; they must go further and show some excuse, some satisfactory reason for leaving the property so long in the possession of West; that the mere convenience or necessities of the vendor was not a sufficient reason. The jury found a verdict for the *plaintiffs* for the value of the property sold. The defendants on a case made, move for a new trial.

*M. T. Reynolds*, for the defendants.

*S. Stevens*, for the plaintiffs.

*By the Court*, Cowen, J. It makes no difference that the debt to the defendants was contracted *after* the first bill of sale. The keeping of such a transaction on foot has a direct tendency to defraud the vendor's subsequent creditors, for they give him credit on account of the very goods which are left in his possession. The statute declares such a transfer, without change of possession, conclusively void

ALBANY,
January, 1838.

Stevens
v.
Fisher.

against all creditors, present or subsequent, unless it be explained and shown to be *bona fide.* 2 R. S. 70, § 5, 6. The evidence to explain in this case rather went to strengthen the charge of fraud. The articles sold amounted to much more in value than all West owed the plaintiffs. No lawful excuse was shown for not changing the possession; and both bills of sale seem to have been kept on foot for a long time, absolute as they were, but with an intent to cover and secure a fluctuating balance of account due to the plaintiffs in a course of trade between them and West. How near this at any time reached the value of the property does not appear. West was poor, and finally appears to have run considerably in debt. In short, this is plainly the too common case of covering a poor man's valuables, perhaps all but what he holds exempt from execution, and hiding them from his creditors. West did not pretend that he was not indebted to others when he sold the colt. Even this poor excuse, directly as it is in the teeth of the statute, § 6, does not apply here. But it is enough that the unexplained possession after sale, for so long a time, accompanied too as it was by many claims and acts of ownership on the part of West, not only as to the property in question but the other articles (for there were others) included in the first bill of sale, stamp this transaction as conclusively fraudulent within the express provisions of the statute.

The judge certainly laid down very sound principles of decision to the jury, which they have disregarded. We think he should have directed them, as matter of law, to find for the defendants. I know the statute declares in another place, Id. 72, § 4, that a question of fraudulent intent is one of *fact* and not of *law.* But surely that must be confined to cases where the question of intent is open, and cannot extend to acts which the same statute has declared shall be deemed *conclusively fraudulent,* unless explained. When the court sees that such acts conspire, and that there is not the semblance of explanation, this makes a question of law; and the statute should be so read, if possible that one part shall not repeal the other. There are many cases where possession is changed, which it is necessary that the

jury should decide. The statute intended *that class of cases*, and should be qualified and confined to them. The statute is the same as if it had said the jury shall judge of the fraudulent intent, except in a case of *unexplained possession after a sale or mortgage* of personal property. If this be not so, such a possession is *not conclusive,* and one part of the statute would repeal the other. Nor can it be said that the jury are to judge of such a case because it is not *possession alone* which makes the fraud, but *possession without explanation;* and they are to judge whether there be any *explanation.* Such a case may be presented, but it does not follow of course. If there be circumstances admissible and tending to rebut the presumption of fraud, the court will submit the question to the jury ; but it does not follow that any thing and every thing is to be received as evidence for that purpose. If a single circumstance or a consecutive series of circumstances be proposed by counsel as evidence, and the court does not think it relevant or tending to overcome the presumption, it should, as in other cases, be excluded ; or if, being received, it falls short of competent evidence, the court may, as in other cases, tell the jury to disregard it. *Doane* v. *Eddy,* 16 Wendell, 522. *A fortiori,* if, as in the case before us, it goes to strengthen the presumption of fraud. Courts are to see that the statute is executed. In case of a sale *nakedly fraudulent* within its very words, if a jury will find that such a sale is honest, we must grant a new trial. It is our duty to do so, unless we submit that the statute shall be overruled. The rule is without exception, that where the evidence is so decisive as to call for a new trial on the jury finding against it, the judge may direct them at the trial, as matter of law to follow it. The case is no longer to be put to them as hypothetical, that on their finding the facts to be so and so, the legal inference of fraud follows. The possession being shown and nothing lawfully explaining it, the judge seeing this, is as much bound to direct a verdict in favor of the creditor who alleges the fraud, as he would be to declare and charge that a deed duly acknowledged or otherwise proved passes a title. The deed may be impeached, but until it is so the jury are not to disregard its effect,

*In the right margin:*

ALBANY,
January, 1838.

Stevens
v.
Fisher.

as declared by the statute or common law.   It were absurd to say that one rule shall govern the judge at the circuit and another the judges on this bench ; and yet no one, surely, will contend that because the jury have found against both the law and the fact, as declared too by a statute, that we are therefore bound to follow and fix our seals to these corrupt bills of sale.

It appears to me not only erroneous but direspectful, to suppose that the legislature ever intended to impose such an humiliating office upon the courts.   They have taken great pains to declare that certain facts shall be considered in law full proof of fraud.   They have selected such as all the world have agreed on for infallible *indicia*, ever since *Twyne's case* in the reign of Queen Elizabeth.   They have enlarged and strengthened the rule by applying it to *mortgages* as well as *bills of sale*.   Let it not be supposed that in the same breath they have committed the execution of such a statute exclusively to a jury, a thing which no legislature ever before thought of, even in matters of the most inconsiderable consequence.   When properly construed, I think the statute has run into no such strange anomaly ; and. that therefore, in this case there must be a new trial, the costs to abide the event.

New trial granted, costs to abide the event.