## SAMUEL CLARK *versus* BULAH FRENCH.

A conveyance of personal propety, made without consideration, and for the purpose of defrauding creditors, is void as well against *subsequent* as *prior* creditors of the vendor.

Where it was agreed between the parties, that one should take certain furniture in a house in payment of a pre-existing debt, the price to be determined by the appraisement of certain men, who ascertained the value in the presence of the parties, and the vendor left the premises and the vendee immediately entered into the occupation thereof and took actual possession of the furniture, this is a sufficient sale and delivery, although no receipt is given for the furniture, or charge or credit on the books, and no formal delivery is made.

REPLEVIN for a quantity of furniture. The plaintiff claimed under a bill of sale of the property from Charles Hayes to himself, dated Sept. 19, 1836, and proved a formal delivery to him. The defendant also claimed the property under a sale from said Hayes to her on the last of April, 1838. The defendant pleaded the general issue, and filed a brief statement, alleging that she was at the time the owner of the property.

The counsel for the plaintiff contended, that the general issue and brief statement were inconsistent; and moved that the defendant should be put to her election to say, by which plea she would abide, and that the other should be stricken out. TENNEY J. presiding at the trial, permitted the defendant to rely on each. Clark, the plaintiff, was bar-keeper of Hayes at the Penobscot Exchange, a public house in Bangor, at the time his bill of sale was made, and also at the time of the sale to the defendant. Hayes occupied the Exchange from April, 1832, until April, 1838, as a tenant of the defendant, who had a life estate therein. When Hayes left that house the defendant occupied it herself, and the plaintiff continued as bar-keeper for some months afterwards. The furniture in controversy was originally purchased by Hayes for the use of the Exchange, and remained in use there until it was taken by this writ of replevin in April, 1841. At the time Hayes left the house, he was indebted to the defendant for rent to an amount greater than the value of the furniture, and it was agreed between them, that she should take the property in payment at a price to be determined by the appraisal of two men. The appraisal was made, and the amount ascertained, Hayes, Clark, Mrs. French and her agent, all being present. Hayes left the house, and Mrs. French took possession immediately and used the furniture, but it did not appear, that any bill of sale was executed, or charge made, or receipt or credit given, or any formal delivery, other than going out and leaving the defendant in possession. It was admitted at the trial, that when the bill of sale was made to the plaintiff, Hayes gave him a note for $600, and that the plaintiff gave his notes to Hayes for $2,000. The objections made, and the facts bearing on certain points, appear sufficiently in the opinion.

The Judge instructed the jury, that if they were satisfied, that said Hayes, passing through four rooms, pointed out to the plaintiff the furniture therein, and stated to him, this is a part of the furniture mentioned in that bill of sale, and I deliver it to you as your property, and the rest is about the house, and if the jury believe that the plaintiff was living in

the house and from his business had rightful access at that time to every part of the house where any articles of the furniture were, it constituted in law, a sufficient delivery.

That they would then consider whether or not the sale from Hayes to Clark was made in good faith and *bona fide,* or fraudulent, and for the purpose of defrauding or delaying his creditors; and if fraudulent, whether or not Clark was conusant of such design and intention ; and that the burden of proof to establish fraud and knowledge in Clark was on the defendant.

That if the jury according to the foregoing instructions should find the sale fraudulent, that they would then consider and find whether or not the defendant had established a title in herself to the furniture in controversy by making and completing the purchase thereof.

That they would consider the evidence as to this point, and if they were satisfied, that it was the design of Col. Hayes to sell and Mrs. French to purchase, and in pursuance of such intention the furniture was appraised and delivered, it constituted a valid sale, and a legal title in the defendant as between the parties to the contract ; that if they believed that French entered into the house and took actual possession of the property, it constituted a sufficient delivery, and that no other or different delivery was necessary.

The Judge further instructed the jury, that whether the sale to the plaintiff was *bona fide* or not, still if he afterwards stood by and saw Hayes sell the same property to the defendant, without making any objection, or interposing any claim to it; and they were satisfied of these facts, and in other respects the sale to Mrs. French was complete, it would be too late for the plaintiff to assert his claim with effect ; or if the plaintiff did state to the agent of Mrs. French, that he had a bill of sale of the property, and said nothing further on the subject, and he afterwards continued to bring forward the property, and was aiding in the appraisal and in completing the sale to Mrs. French, knowing fully at the time the object and the design of Hayes and Mrs. French, and made no objection, the

jury would be authorized to consider him precluded from afterwards setting up a title thereto.

The jury returned a verdict for the defendant, which was to be set aside if any of the rulings or instructions of the Judge were erroneous.

*Kent & Cutting* argued for the plaintiff.

On the first point, that in an action of *replevin,* the pleas of the general issue and of property in the defendant, are inconsistent, were cited Rev. Stat. c. 115, § 18; 1 Mass. R. 181; 1 Greenl. 198; 16 Maine R. 84; 15 Mass. R. 48; 1 Pick. 1.

On the third point, that as the rent, for the payment of which the purchase of the defendant was made, accrued after the bill of sale to the plaintiff, she cannot come in as a creditor to defeat the bill of sale to the plaintiff, on the ground of want of sufficient consideration, or of its being fraudulent as to creditors, were cited the statutes of frauds of 13, c. 5, and 27, c. 4, of Elizabeth, and 4 Kent, (4th Ed.) 462. . It was contended, that the statute of 27 Eliz. applied exclusively to real estate, and that hence the case of *Howe* v. *Ward,* 4 Greenl. 195, had no application to the present case.

*McCrillis* and *Moody,* for the defendant, in their arguments, on the first point, relied on the express provisions of Rev. Stat. c. 115, § 18, as authorizing this mode of pleading.

On the third point, that where there is actual fraud in the sale, to cover it for the benefit of the seller against his creditors, there is no distinction between prior and subsequent creditors, or between sales of real or personal property, were cited 3 Johns. C. R. 371; 18 Johns. R. 515; 2 Kent, 441; Rob. on Fr. Con. 541; Cowper, 434; 14 Mass. R. 137; 20 Pick. 247; 2 Pick. 411; 3 Metc. 338; 4 Greenl. 195; 4 Kent, 464; 10 Ves. 144; 2 B. & P. 59; 15 East, 21; 5 Taunt. 212.

The opinion of the Court was drawn up by

WHITMAN C. J. — The verdict in this case was taken subject to the exceptions on the part of the plaintiff to the rulings and instructions of the Court. It does not appear to be im-

portant to consider of the first supposed error, viz., as to whether the defendant should have been put to her election in her defence, to proceed under her plea, or under her brief statement. The result was ultimately unaffected by the ruling of the Court in this particular. The decision did not turn upon any question concerning the taking. The defendant, if put to her election, it is manifest, must have selected the matter set out in the brief statement for her defence; and the decision took place upon no other ground. The only effect of the error, if such it was, was in the first instance, to put the plaintiff to the proof of the taking, about which, ultimately, there was no question. It would not be reasonable, therefore, to set the verdict aside for this cause, and under such circumstances.

It is insisted that the testimony of Ebenezer French, the son of the defendant, should have been ruled out of the case; as upon the production of a certain paper purporting to be a contract, on certain terms and conditions, for a lease of the Exchange Coffee House, in 1831, for five years, the rent for which house, which accrued after the lapse of the five years, formed the consideration for the purchase set up by the defendant, of the furniture in question, was in the witness' name, as if he were the person to make the lease. This contract, thus made in 1831, for a lease for five years, had no tendency to show that the witness had any interest in rent, which accrued after the five years had elapsed. Besides, the defendant was sued for a lot of furniture, which she claimed to own. Whether the verdict should or should not be in her favor did not seem, in anywise, to concern the witness, in a pecuniary point of view. This objection, therefore, cannot be sustained.

It is contended that Hayes never made any sale of the furniture to the defendant; and that there was no bill of sale made, or delivery of it; and no credit given for it. But we think the instructions of the Judge, upon this point are well warranted by the rules of law. There was an agreement for the purchase, an appraisement of the property to ascertain its value; and the defendant thereupon took possession of, and

used it for years afterwards. Whether Hayes made a charge of it, or not, cannot affect her rights. It would seem to have belonged to him, to make such a charge; and she might well rely upon him to do so; and that it would, on settlement, appear as an item in his account. She was confessedly the creditor of Hayes; and as such took the furniture in payment *pro tanto.* The same was then, and ever had been in his possession; and the sale to her was *bona fide,* and for a valuable and adequate consideration.

The evidence, moreover, tended to show, that, when the appraisement took place, the plaintiff was present, and well knew what was going on; and was even active in bringing forward the articles for appraisement. And although he stated that he had a bill of sale of the furniture, yet he intimated no objection to the proceedure. It seems also that he remained in the house with the defendant, as her bar-keeper, for more than a year afterwards; and must have seen this large amount of furniture constantly in use by her; without, so far as appears, the slightest intimation of any claim to it, or to compensation for the use of it. Under such circumstances, it could not be deemed matter of surprise if a jury were to draw the inference, that in fact there never had been an actual sale to the plaintiff; his bill of sale to the contrary notwithstanding. Surely such evidence, connected with the insolvency of Hayes, and his fear, as may be gathered from the testimony of one of the witnesses, to have property stand in his name; and the fact that the plaintiff had been his bar-keeper for years, and of course a confidential agent, might well lead to the presumption, that the bill of sale was but colorable and never understood by him or Hayes, to have been designed to be any thing more. If further evidence were wanted to confirm such a presumption, there is the circumstance, that the plaintiff gave his note to Hayes for $2,000; and at the same time took Hayes' note for $600. If the pretended sale were any thing, other than colorable, why was not the $600, if any such sum was due to the plaintiff, deducted from the $2,000, and a note taken for the balance? And why was no effort made by

Hayes, embarrassed as he was during his lifetime, a period of several years thereafter, to collect any part of it? But the cause was not put to the jury precisely or solely upon this ground. It was put to them, also, upon the hypothesis, that there was in fact a sale to the plaintiff, but that it might not be valid as against creditors.

Whether the jury found for the defendant upon this ground, or upon the other, or both, we cannot now know.

That being the case, it becomes necessary to ascertain whether the instructions were correct upon that hypothesis. It is contended that the sale to the plaintiff was anterior to the existence of the indebtedness to the defendant, and, therefore, that she can have no right to question the validity of the sale to the plaintiff. The evidence as to the accruing of the defendants' debt seems undeniably, to show it to have been a year or more posterior to the bill of sale. There are authorities, which in their general aspect when considered without due discrimination, may seem to favor the plaintiff's position. But when critically examined, it will be found, that there are many of no inconsiderable weight, which, in reference to a case like the one before us, will tend to a different result. In the 1st Story on Equity, 352, it is said, " where a conveyance is intentionally made to defraud creditors, it seems perfectly reasonable, that it should be held void as to all subsequent, as well as to all prior creditors. In the 1st Eq. Dig. by B. & H. 570, it is said, where a deed is set aside as fraudulent against creditors, the property becomes assets, and subsequent creditors are let in. In Newland on Contracts, 389, it is said, " the deeds, which are avoided by the statute of 13 Eliz. are void as well against those creditors whose debts were contracted subsequently to such deeds, as against those creditors whose debts were in existence at the execution of the deeds." And in a note in 1 Story's Eq. 353, he says, " where a settlement is set aside, as an intentional fraud upon creditors, there is strong reason for holding it so as to subsequent creditors."

In *Taylor* v. *Jones*, 2 Atk. 600, the master of the rolls says, " here is a trust left to the husband, under this deed,

and *his continuing in possession is* fraudulent as to creditors." " The next question is, whether the debts contracted after the settlement made are included in the statute of the 13 Eliz." " The word others in the statute seems to be inserted to take in all manner of persons, as well creditors after as before the settlement." And " it is very probable, that the creditors after the settlement trusted Edward Jones, the debtor, upon supposition that *he was the owner of the stock, upon seeing him in possession.*" If, therefore, in the case at bar, there was originally, in the making of the bill of sale by Hayes to the plaintiff, an intention to defraud creditors, *the conveyance,* according to those authorities, ought to be held void as against the defendant.

If a deed be made, which is intended to be absolute, without the reservation of any secret trust for the benefit of the vendor, although made with a fraudulent intent, well understood and intended, by both parties, to place the property beyond the reach of creditors, and although made for a valuable consideration, yet, wanting the other ·ingredient, viz. good faith; it shall be avoided only by creditors existing at the time. But if the deed be not absolute in fact, though in form it may be so, and a *secret trust and confidence exist for the benefit* of the vendor, in such case, it should not only be held void against precedent but subsequent creditors. For it is, in such case, a continuing fraud; and may actually operate as such as well in reference to debts contracted after as before the conveyance. . Property conveyed in trust is still the property of the vendor to every beneficial purpose ; and if he continues in possession it induces others to give him credit; and credit so obtained ought to have all the benefit to be derived from legal ownership in the vendor.

In the case of *Archer* v. *Hubbell,* 4 Wend. 514, the Court say, " the established doctrine of this Court is, that a voluntary sale of chattels, with an agreement that the vendor may keep possession is, except in special cases, and for special reasons to be shown to and approved of by the Court, fraudulent and void against creditors." This was the case of a sale of the

furniture of a tavern, and it was for a valuable and adequate consideration, and it did not appear otherwise than by the continuing possession of the vendor, unexplained, that there was any intention to defraud creditors. But such continued possession was held to be evidence of a secret trust.

In 3 Bacon's Abr. it is laid down, that, "if goods continue in the possession of the vendors after a bill of sale of them, though there is a clause in the bill that the vendor shall account annually with the vendee for them, yet it is a fraud, since if such coloring be admitted it would be the easiest thing in the world to avoid the provisions and cautions in the act.

Some of the seeming discrepancy in the authorities may have arisen from not discriminating between the different kinds of fraudulent conveyances, and the different degrees and shades of fraud in each. For some a valuable and adequate consideration is paid, and actual possession delivered and retained, yet they are made with a view to aid the debtor to convert his property into that, which cannot be attached or levied upon, and so to aid him in placing it beyond the reach of creditors. But being covinous such conveyances may be avoided by creditors, who were such at the time, but not by subsequent creditors; for there will be no secret trust, in such cases, for the benefit of the vendor. And in many cases of absolute conveyances, and for a valuable and adequate consideration, the possession may be allowed to be continued in the vendor, if it can be made evident that no secret trust is reserved for his benefit. But when the sale purports to be absolute, and the possession, unexplained, still remains with the vendor, and it be made out that the sale was colorable merely, and for the purpose of defrauding creditors, then it may well be inferred that there was not only a secret trust for the benefit of the vendor, but that fraud was actually meditated against subsequent as well as prior creditors. In every such case the pretended sale should no more protect the property from the subsequent, than from the prior creditors; for the property may be regarded as still in the debtor. The authorities before cited, as well as reason and common sense, will certainly sus-

tain this doctrine. And furthermore, the defendant in the case at bar, seeing Hayes in possession of the furniture, may well have supposed him to be the owner, and might give him credit on account of it. The jury may well have thought there was no reason to doubt, that there was a secret trust remaining for the benefit of Hayes; or else why was the possession and constant use continued in him, and without accounting for the use or rent of it, so far as appeared? We think, therefore, that the instruction upon this point was substantially correct. The able reasoning of the learned C. J. MELLEN, in the case of *Howe* v. *Ward*, 4 Greenl. 195, may be cited in elucidation of the foregoing remarks; and we are not to be understood as questioning the soundness of the corollaries by him deduced in conclusion, when correctly understood.

*Judgment on the verdict.*