CHENOWITH & Co.
vs
DICKINSON & SHREWSBERRY.

---

CHANCERY.

# Chenowith & Co. *vs* Dickinson & Shrewsberry.

*Case 42.*

### ERROR TO THE LOUISVILLE CHANCERY COURT.

### *Bailment. Bailee. Diligence.*

*January 6.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

Case stated.

CHENOWITH & Co., as commission merchants at Louisville, received for sale from Dickinson & Shrewsberry, large quantities of salt in barrels, which they stored in their framed warehouse, situated on an alley back of their business house, and charged for storage as well as

for selling. Out of a lot of about 900 barrels thus received and in store, it appears that about 240 barrels were stolen, in quantities of from twenty to twenty five barrels, and at intervals of several days, so that the entire number of 240 barrels, was taken at about ten different times, running through a period of about one month. The robbery was affected by passing into the warehouse through a hole occasioned by a plank being off on the side or rear of the building, and the door upon the alley being opened from the inside. The barrels were rolled out into the alley and placed on drays, which took them to New Albany, where they were sold at a low price. The drays were thus loaded, sometimes a little after and sometimes before sun rise in the morning. And it does not appear that Chenowith & Co. became aware of the loss, or at least that they took any means of prevention or discovery, until other holders of salt in Louisville hearing of the sales at low prices in New Albany, made investigations which led to the ascertainment of the facts above stated.

Chenowith & Co. claim to be exempt from loss on account of the abstraction of this large quantity of salt, on the ground that in the city of Louisville, the dealers in salt generally pile the barrels in open sheds or on vacant lots, or on the side walks in front of their stores, and occasionally in warehouses such as theirs; that from the weight of the barrels, the cheapness of the article, and its general safety from depridation when kept in the usual way, they must be taken to have used ordinary diligence for the safe keeping of that which had been consigned to them, and therefore, that they should not be responsible for the loss. This claim of immunity might have been entitled to great consideration, if the question had been upon their responsibility for loss by a single theft, since they could not have been required to keep a constant watch, and their warehouse might be regarded as a reasonably safe place of deposit for salt, when compared with the general manner of keeping that article. But although their warehouse might, in some respects, be deemed a safer place of deposit than the open sheds or lots or sidewalks on which salt was

CHENOWITH &
Co.
*vs*
DICKINSON &
SHREWSBERRY.

A consignee of salt in barrels, stored it in his warehouse in Louisville to be sold on commission; an entry was made by pulling off a plank, opening the door, and at three or four different times, a large number of the barrels stolen—Held that the consignee was liable, not having used ordinary diligence to preserve the salt.

CHENOWITH &
Co.
vs
DICKINSON &
SHREWSBERRY.

frequently kept in Louisville; and although so far as the mere storage or place of deposit is concerned, they may perhaps, have used more than ordinary care, yet this warehouse, removed from the view of the proprietors, accessible on all sides and subject to be opened to the entry of the illdisposed, by the falling off or drawing off of a single plank, was not so absolutely secure as to justify the withdrawal of all further care or supervision. Those who piled their salt barrels on the pavements by their doors, or in open sheds or lots, had opportunities, more or less numerous every day, of seeing the condition of the mass, and thus of detecting any appearable diminution, and of taking immediate steps, if not for recovering the loss, at least for preventing further depredation. The publicity and exposure of these places of deposit, would of themselves, present some obstacles to the commission of theft. And although there might be greater physical difficulty in stealing salt from an enclosed warehouse than from the open places referred to, this increased difficulty is more than compensated by those facilities and inducements which are obviously presented in the case of such a warehouse as that now in question, if the owners, trusting entirely to it for the security of the deposit, bestow no observation or care upon the condition, either of the house or of the articles within it. The fact that the salt was in a house, did not justify nor compensate the absence of all supervision. It did not, of itself, place the salt in as safe a condition as if it had been piled by the public store of the consignees, or in any other place where it would have been constantly presented to the observation of themselves or their agents. The mere fact of putting the salt in this warehouse cannot, therefore, be regarded as covering the whole ground of ordinary diligence, and dispensing with any further care or supervision over it. There is no proof that those who kept their salt barrels in the streets or in other open places, or even in insecure warehouses, never looked at it, or would not probably have discovered the fact at once, if any considerable portion of it had been stolen. There is no pretence of a usage with regard to salt in store at Lou-

āsville, which would exempt the consignee from all further care after he had put it in a house. And the circumstance that no loss had previously occurred in consequence of the exposed manner in which the article was usually kept, attributable, as in part it must be, to the opportunities of daily supervision afforded by the ordinary modes of storage, although it might justify the absence of constant supervision and vigilance, cannot excuse the entire want of attention to the subject.

We concur, therefore, with the Chancellor, in the opinion that it was incumbent upon the consignees in this case, to bestow a general supervision and care upon the salt, though deposited in their warehouse; that without such supervision there was not, even in reference to the general usage of Louisville, ordinary care or diligence in the keeping of the article; that the failure to discover the condition of their warehouse and the continuing abstraction from it of forty or fifty barrels of salt a week, for four or five weeks, or if they knew, as they should have known, the condition of their warehouse, the failure thereupon to repair it and to scrutinize the condition of its contents, and to take the proper steps for prevention of further injury, is evidence of such a want of ordinary diligence, and in fact of such gross negligence as must render the consignees liable for the loss. If they had used ordinary diligence, they might, perhaps, have prevented any part of the loss, or they would, at any rate, have discovered the robbing in its earliest stages, and might thus have prevented the subsequent loss. But as they have not used ordinary diligence from the beginning to the end, but were grossly negligent, in paying no attention to their warehouse or the salt in it, they are, in our opinion, responsible for the entire loss.

Wherefore, the decree is affirmed.

*Pirtle and Speed* for plaintiffs; *Guthrie* for defendants.