SHAW *v.* THOMPSON.

In general, where possession does not follow the sale, but remains with the vendor, such sale indicates a secret trust, and is colorable and fraudulent, and may be so pronounced by the court.

THIS was a writ of replevin for a horse, and the defendant, in his avowry, justified the taking, as sheriff of the county, by virtue of a writ of mesne process against one Alanson Shaw, whose property it was alleged to be. The plea to the avowry denied that the property was in Alanson Shaw, but alleged that it was in the plaintiff, Asa Shaw, and upon this, issue was taken.

At the trial it appeared by the plaintiff's evidence that in March, 1858, Alanson Shaw was the owner of the horse, which was three years old, subject to a mortgage to one Currier for the purchase

money due from Alanson for the horse, and that some time in that month he went to his father's, a distance of about six miles, with this horse and a sleigh, and there sold the horse and harness to his father for seventy-five dollars, which the father then paid in money. It appeared that the note given by the son for the horse was about to become due, and that it was so represented to the father, who knew of the existence of the mortgage, and the sale was made to enable the son to obtain the means to pay off the mortgage. It appeared also that after talking over the subject of the sale, the father and son went together with this horse and sleigh to the house of a Mr. Sanborn, a neighbor of the plaintiff, who was in presence of his son, James Sanborn, informed of the sale, and the money was then paid by the plaintiff, after being counted by the said Sanborn. They then returned to the plaintiff's house, and the horse was taken from the sleigh and the harness taken off, and he was put into the plaintiff's stable. After that, his son staid an hour or two, and after he had started to go home, and had gone a few rods, the plaintiff called him back, and told him if he was a mind to take the colt and finish breaking him to a carriage, he might keep him and use him, together with the harness, until he called for them. The son thereupon returned home with the horse and harness, and kept them until the attachment by the defendant, about November 1, 1858.

The horse was delivered to the plaintiff on the service of the writ of replevin, and he kept it two or three days, and then the son came and took him, the plaintiff telling him he might keep him as he had kept him before, and he has not since been in the plaintiff's possession, and he is now in possession of the son. It also appeared that there was no written assent by Currier, the mortgagee, to a sale ; but that on the next day after the sale to the plaintiff, the son paid off the mortgage.

The plaintiff offered to prove that the mortgagee, Currier, assented verbally to the sale by the mortgagor ; but the court rejected the evidence, subject to exception.

For the purposes of this trial it was admitted that the debt for which the horse was attached was due and owing and existing at the time of the sale in question.

On this state of facts a verdict was directed for the defendant, for damages assessed at seventy dollars, subject to the opinion of the whole court, with the agreement of parties, that if, in the opinion of the court, the verdict was rightfully directed, judgment should be rendered upon it, unless the plaintiff elected to contest the debt, in which case the verdict should be set aside for that purpose ; but if the court should be of opinion that the direction of a verdict for the defendant can not be sustained, then it should be set aside and a general judgment rendered for the plaintiff, one dollar damages for the detention ; and the questions arising were reserved.

*J. Clark*, for the defendant, cited the following authorities : *Kendall* v. *Fitts*, 22 N. H. 7 ; *Page* v. *Carpenter*, 10 N. H. 77 ; *Twyne's Case*, 3 Coke 49 ; 1 Smith L. C. 67 ; *Heath* v. *West*, 26 N. H. 191 ; *Robinson* v. *Leavitt*, 7 N. H. 99 ; *Wilson* v. *Kimball*, 27 N. H. 300 ; *Ingraham* v. *Martin*, 3 Shep. 373.

*Burrows & Ela*, for the plaintiff, referred to *Boutelle* v. *Melendy*, 19 N. H. 196 ; *Seavey* v. *Dearborn*, 19 N. H. 351 ; *Page* v. *Carpenter*, 10 N. H. 77 ; *Coburn* v. *Pickering*, 3 N. H. 415 ; *Trask* v. *Bowers*, 4 N. H. 369 ; *Wolcott* v. *Keith*, 22 N. H. 196 ; *Lewis* v. *Whittemore*, 5 N. H. 364 ; *Boyden* v. *Towne*, 11 Pick. 364.

NESMITH, J.   Chancellor Kent lays down the rule, " That, where there was a voluntary sale of chattels, absolute or contingent, with an agreement in or out of the deed, that the vendor may keep possession, or if possession be kept without any agreement, except in special cases, and for special reasons to be shown to and approved by the court, it is fraudulent and void against creditors." *Jennings* v. *Carter*, 2 Wend. 446 ; *Stevens* v. *Fiske*, 19 Wend. 181 ; 20 Wend. 548 ; *Camp* v. *Camp*, 20 Wend. 628 ; 6 Hill 433.

Chief Justice Marshall, in *Edwards* v. *Harben*, says, that an unconditional sale, where possession did not accompany and follow the deed, is, with respect to creditors, on the sound construction of the statute of Elizabeth, a fraud, and should be so determined by the court.   *Meeker* v. *Wilson*, 1 Gall. 419 ; *Phettiplace* v. *Sayles*, 4 Mason 312 ; *Hamilton* v. *Russell*, 1 Cranch 309.   So in Kentucky, the transmutation of possession must not be merely nominal or momentary, but must be a real, actual, open and continued possession in the vendee, such as may be publicly known.   *Meredith* v. *Sanders*, 2 Bibb 101.   For the matter is not helped by a temporary delivery, and a redelivery on loan, though the sale and loan be honest, and the sale be on a valuable consideration, for it is a trust, and gives the vendor a false credit, and it is error to leave the matter to a jury ; and a redelivery on bailment, or hiring, would be equally bad. *Goldsbury* v. *May*, 1 Litt. 254 ; *Laughlin* v. *Ferguson*, 6 Dana 111 ; *Waller* v. *Crable*, 8 B. Mon. 158.   So in Indiana, possession in the vendor inconsistent with the conveyance is a fraud in law, and evidence is not admitted to explain a possession which is inconsistent with the contract.   *Jordan* v. *Turner*, 3 Blackf. 309.   The same doctrine settled in Virginia.   *Tavernmer* v. *Robinson*, 2 Robinson 280.   In Pennsylvania it is held that " the vendee's possession must continue, for, if the property go back after a brief interval, the transaction is colorable and fraudulent."   *McBride* v. *McLellan*, 6 W. & S. 110.   The same stringent rule has been adhered to in Vermont.   *Mills* v. *Warner*, 19 Vt. 609.   In *Osborne* v. *Fuller*, 14 Conn. 530, the court say, " actual possession must follow the sale ; the possession in the transferree must be actual and *bonâ fide*.   There must be shown reasons for the retention of the delivery, legally sufficient and satisfactory."   These cases rest upon the leading English case, *Twyne's Case*, 3 Coke 80.

" Where the donor continues in possession, and uses the goods as his own, by reason whereof he trades and traffics with others, and defrauds and deceives them, such possession is evidence of a trust for the benefit of the donor, and fraud is appareled and clad with a trust, and a trust is the covert of fraud."   *Ludlow* v. *How*, 19 Johns. 218 ; 1 Pars. on Cont. 442, note.

This subject has recently been ably and fully examined by Bel-

lows, Justice, in *Cooledge* v. *Melvin*, 42 N. H. 510. From the current and weight of our authorities in this State, our rule of practice and action may be considered as suggested by the court in *Kendall* v. *Fitts*, 22 N. H. 1. "All agreements or bargains, express or implied, which entered into the contract of sale, whereby the vendor should retain possession of the property for the advantage of either party, and not for the accommodation of the vendee, and all agreements and contracts whereby the vendor was to retain possession, made directly after the sale, without changing the possession, or immediately after changing, should be regarded as conclusive evidence of fraud." *Page* v. *Carpenter*, 10 N. H. 77 ; *Clark* v. *Morse*, 10 N. H. 236 ; *Parker* v. *Pattee*, 4 N. H. 176 ; *Trask* v. *Bowers*, 4 N. H. 309 ; *Walcott* v. *Keith*, 22 N. H. 196 ; *Robinson* v. *Holt*, 39 N. H. 557.

Where the trust is admitted, or proved, the fraud is an inference of law, which the court is bound to make. *Coburn* v. *Pickering*, 3 N. H. 415 ; *Paul* v. *Crooker*, 8 N. H. 288. There have doubtless been many cases settled in this State upon the modified doctrine and practice more prevalent in Massachusetts and Maine, that " retention of possession in the vendor, upon an absolute sale and conveyance of chattels, is sufficient evidence of fraud," but may be explained as consistent with the nature, operation and purpose of the conveyance, and that it is in no case conclusive evidence of fraud, " and the question of fraud is to be decided by the jury upon the whole evidence of the case." *Oriental Bank* v. *Haskins*, 3 Met. 332 ; *Fletcher* v. *Willard*, 14 Pick. 464 ; *Clark* v. *French*, 23 Maine 221 ; *Calle* v. *Copeland*, 6 Shepley 127 ; Hill. on Sales 355 ; *Seavey* v. *Dearborn*, 19 N. H. 351 ; *Lewis* v. *Whittemore*, 5 N. H. 364. In this case, the long and continued possession of the colt in question by Alanson Shaw, the son, after the presumed sale, must be regarded as legally irreconcilable with the ownership at the same time in the father. The son retains possession from March to November under the pretense of breaking the colt, and without other contract. We think the law may fairly raise the presumption against this class of unusual contracts, and that a secret trust must have actually existed, which rendered the transaction colorable and fraudulent in law, and therefore the animal is made liable to attachment by the creditors of the son. Such we consider the legitimate result of the action of the parties, and the proper finding of the court upon the facts here admitted, regarding the sale as an absolute purchase by the father, and without any proper or usual subsequent possession of the colt being retained by him after the sale. The son is to be regarded as the agent of his father in paying Currier, the mortgagee of the colt ; and the father had previously purchased the equity of redemption in the colt of his son ; so the title was made absolute in the father ; therefore the aforesaid legal inferences justly arise in the case.

There must, therefore, be judgment on the verdict, unless on the condition stated in the case the plaintiff elects to contest the debt of the creditor.

*Judgment on the verdict.*