<div style="text-align:right">NEW-YORK,<br>May, 1822.<br>JACKSON<br>v.<br>BRUSH.</div>

<div style="text-align:center">Judgment affirmed.</div>

---

JACKSON, *ex dem.* SHERRILL, *against* BRUSH.

EJECTMENT for a house and lot in *Poughkeepsie*, tried before Mr. Justice *Platt*, at the *Dutchess* Circuit, in 1820. The defendant, by agreement, was made defendant in the place of *Moses Armstrong*, who was the tenant in possession, at the commencement of the suit. The lessor of the plaintiff gave in evidence the records of two judgments in the Supreme Court in favour of the *Middle District Bank* against *Robert G. Livingston*, both docketted the 9th of *August*, 1816; and two executions issued on the same judgments, tested the 14th of *August*, 1819, returnable at the *October* term following, and which were delivered to the sheriff on the 22d of *September*, 1819. Also, a deed from the sheriff of *Dutchess* to the lessor of the plaintiff, dated *January* 13, 1820, for the premises in question, for the consideration of eighty dollars, and reciting the two executions.

*Moses Armstrong* testified, that he took possession of the premises in question in the spring of 1814, under *Cornelius Brown*, to whom he paid rent for two years. In the spring of 1817, one *Sleight* informed him that he and *Robert G. Livingston* had purchased the property, and the witness then paid the rent to *Sleight* for a year and an half, or two years, to which *Brown* made no objections. Afterwards, *Brush*, the defendant, said that he had purchased the premises, and claimed the rent. The witness informed *Sleight* and *Robert G. Livingston* of the claim of the defendant, and they claim-

<div style="float:right;width:30%">An acquiescence on the part of the landlord, as that his tenant should pay the rent to a third person, is sufficient to render an attornment valid.

A conveyance by a person indebted at the time, absolute on the face of it, but intended to enable the grantee to sell the land, and pay the debts of the grantor, rendering the surplus, if any, to him, is void as against his creditors.</div>

ed a part of a quarter's rent, but finally acquiesced in the right of the defendant, to whom the witness paid the whole rent.

*Robert G. Livingston*, a witness for the defendant, testified, that *Cornelius Brown* conveyed the premises in question to him and *Sleight*, in *March*, 1817. The witness and *Sleight* were in negotiation for the sale of the premises to *Brush*, who agreed to give three thousand dollars for the property; and they left *Brown's* deed with him for the purpose of having a deed drawn from them to *Brush*, but the bargain was broken off, in consequence of *Brush* requiring a warranty, which *Livingston* and *Sleight* refused to give. This was a short time before *Brush* purchased the property at the sheriff's sale. The deed in question was never returned to *Livingston* and *Sleight*, and it appeared that due notice was given to the defendant to produce it at the trial, which he had declined to do. The witness further testified, that the conveyance from *Brown* (who was their brother-in-law) to him and *Sleight*, was for the purpose of securing a debt due from *Brown* to the witness, and to enable them to sell the property, and pay *Brown's* debts, returning the surplus, if any, to *Brown*; that the witness informed *Brush* of this fact at the time of the negotiation between them, and that the deed was absolute on the face of it. That at the time the deed was executed, he heard that some of the creditors of *Brown* were pressing him; and he thought *Brown* would not be able to pay his debts, if the property was sacrificed. That immediately after the deed was given, he offered the property for sale publicly, and supposed that it was worth enough, at that time, to pay all *Brown's* debts. The witness further stated, that he never consented that *Armstrong* should pay rent to the defendant, or that he should become his tenant, except on the supposition that the defendant was to become the purchaser of the property from the witness and *Sleight*. The witness took a note from *Brown* for the balance due to the witness on a settlement, of 673 dollars and 66 cents, which was read in evidence; and the witness stated that part of the note was for about 300 dollars due to him from *Brown* at the time the deed was executed, and the residue for a debt which had accrued sub-

sequently; and that this note was assigned by him to the lessor of the plaintiff. The witness was objected to by the defendant as incompetent, but the Judge overruled the objection; and the lessor of the plaintiff, to whom the judgment had been assigned by the *Middle District Bank*, executed a release to the witness of all claims under the judgments and executions. The plaintiff next gave in evidence a quit-claim deed of the premises to him from *Robert G. Livingston*, dated *September* 13, 1819.

The defendant gave in evidence the record of a judgment in the Court of Common Pleas of *Dutchess* County against *Cornelius Brown*, docketted the 6th of *April*, 1818, and an execution issued thereon, tested *January* 22, 1818, and delivered to the sheriff *April* 11, 1818; and a deed of the sheriff to him, on a sale by virtue of the execution, dated *June* 5, 1818, for the consideration of 355 dollars, for a part of the premises in question; also, a record of a judgment in the Court of Common Pleas in favour of *James Wilson*, against *Cornelius Brown* and *Robert G. Livingston*, docketted *July* 8, 1818, and an execution issued thereon; also, the record of another judgment in the same court in favour of *E. Sterns*, against *Brown*, docketted *July* 9, 1817, on which execution was issued and delivered to the sheriff. The defendant then gave in evidence a deed from the sheriff to him, dated *October* 6, 1818, for the consideration of 300 dollars, reciting the two last-mentioned executions, and conveying to the defendant the other part of the premises.

It was proved, that about the time of the first sale by the sheriff to the defendant, *Sleight*, on being asked if he was going to attend the sale, said, that the deed to him and *Livingston* was given for the purpose of selling *Brown's* property, to pay his debts; and if any thing was left, *Brown* was to have it; that he (*Sleight*) had made no advances, though *Livingston* had; and that he (*Sleight*) had, therefore, no interest in the property. At the time of the sale, it was understood that *Livingston* and *Sleight* had a deed of the premises.

A verdict was taken for the plaintiff, subject to the opinion of the Court, on a case containing the facts above stated.

*Oakley*, for the plaintiff, contended, 1. That the *attornment* of *Armstrong* was void. There was no evidence that it was with the consent of *Livingston*, and he must still be considered as the tenant of the lessor. (*Jackson*, ex dem. *Sagoharie*, v. *Dobbin*, 3 *Johns. Rep.* 223. *Jackson*, ex dem. *Vandeuzer*, v. *Scissam*, 3 *Johns. Rep.* 499. *Jackson*, ex dem. *Smith*, v. *Stewart*, 6 *Johns. Rep.* 34. *Jackson*, ex dem. *Davy*, v. *Watts*, 7 *Johns. Rep.* 157. *Jackson*, ex dem. *Anderson*, v. *M'Cleod*, 12 *Johns. Rep.* 182. 1 *Caines' Rep.* 444. 2 *Caines*, 215.)

2. That the declarations of *Sleight* were not admissible evidence. The rights of tenants in common are distinct; and one cannot be allowed, in any way, to defeat the right of his co-tenant. If he cannot do this by deed, *a fortiori*, he cannot by parol declarations. Again: he was offered as a witness to prove that the deed was in trust; but he was inadmissible for that purpose. (7 *Johns. Rep.* 186. 10 *Johns. Rep.* 336. 358. 16 *Johns. Rep.* 302. 306. 1 *Johns. Chan. Rep.* 342.)

3. *Livingston* had an interest in the premises which was bound by the judgment, and might be sold by the execution. He was either seised of the premises absolutely in fee, or is to be considered as a mortgagee in possession; or, thirdly, he must be deemed a trustee for the creditors, after payment of the debts of *Brown*. We contend that he was a mortgagee in possession. An equity of redemption may be sold under an execution against a mortgagor in possession. (*Waters* v. *Stewart*, 1 *Caines' Cases in Error*, 47.) But before foreclosure, the mortgaged premises cannot be sold under an execution against the mortgagee. (*Jackson* v. *Willard*, 4 *Johns. Rep.* 41—43.) The residuary interest of *Brown*, after payment of his debts, could not be sold on an execution against him. (*Wilkes* v. *Ferris*, 5 *Johns. Rep.* 335. 8 *East*, 467. 485.) The only remedy is in the Court of Chancery for an account. The Court having decided (4 *Johns. Rep.* 43. 6 *Johns. Rep.* 294. 7 *Johns. Rep.* 282.) that the premises could not be sold under an execution against a mortgagee out of possession, it seems to be impliedly admitted, that if he is in possession, it may be sold. Though a judgment at law is not a *lien* on a mere equitable interest,

NEW-YORK,
May, 1822.

JACKSON
v.
BRUSH.

a judgment and execution will pass any interest which a court of law can protect. (*Bogert* v. *Perry*, 1 *Johns. Ch. Rep.* 56, 57.) This Court, in *Jackson*, ex dem. *Stone*, v. *Scott*, (18 *Johns. Rep.* 94.) decided, that a person in possession of land under a contract for the purchase of it, had an interest in it, which might be sold on execution. (7 *Johns. Rep.* 205. 16 *Johns. Rep.* 189. 192.) Now, *Livingston's possession* being united with his legal title as mortgagee, there is an *interest* which might be sold under the execution.

But if *L.* is not deemed a trustee in possession, yet his interest is so absolute and entire, as against *Brown*, that it may be sold. So, that whether *L.* is considered as the owner in fee, or a mortgagee in possession, or a trustee, he had an interest which might be sold under the execution. It may, perhaps, be objected, that the deed from *Brown* to *S.* and *L.* is void, on account of the residuary interest reserved to *B.*; but that is merely after payment of all his debts, and is no more than the law would give him. Again, creditors only can make this objection, and the conveyance was for their benefit. Such a residuary interest exists in every case where property is assigned to pay debts; but unless the conveyance is colourable, and made for the sake of such a resulting trust, it is not void. (*Wilkes* v. *Ferris*, 5 *Johns. Rep.* 335—345.)

4. But considering this conveyance as a mortgage, then the lessor of the plaintiff was the assignee of that mortgage, by the assignment of the debt to him by the bank, as well as by the quit-claim from *L.* to him; and as assignee of the mortgage he may maintain ejectment.

*Brush, contra*, insisted, that the deed could not be considered as a mortgage, nor was it recorded as a mortgage. There was no debt, note, bond, or account due to *L.* It was proved not to be an absolute conveyance; and, indeed, that seems to be admitted. If any thing, it must be a deed in trust; and as such, it is clearly fraudulent and void. (*Hyslop* v. *Clark*, 14 *Johns. Rep.* 458. *Murray* v. *Riggs*, 15 *Johns. Rep.* 571.) The lessor was out of possession, and the sale under the judgment and execution against *L.* was subse-

quent to the purchase of the defendant.   (*Jackson*, ex dem.
*Marten*, v. *Bush*, 10 *Johns. Rep.* 223.   *Jackson*, ex dem.
*Bowne*, v. *Henman*, 10 *Johns. Rep.* 292.)

YATES, J.   A question is made with regard to the *attorn-
ment* of *Moses Armstrong*, the tenant in possession, to the
defendant.

It is objected, that this attornment is void ; and that
*Brush* being made defendant, as landlord, by consent, the
lessor is entitled to the possession as against him, in the
same manner as he would be against *Armstrong*, as his
tenant.

The facts disclosed by the case on this subject abundantly
show, that the lessor of the plaintiff ought not to recover on
that ground.  If *Armstrong* had attorned without the assent of
*Livingston* and *Sleight*, the plaintiff's recovery could not be
avoided.   The *attornment* would have been void under the
statute, and *Brush* having been made defendant, as landlord,
by the lessor's consent, the settled principle between land-
lord and tenant, in relation to attornment, must have con-
trolled the case.   The fact, however, is otherwise ; it not
only appears that it was done with their knowledge and
acquiescence, but, from *Livingston's* testimony, it would seem
they assented to it.   He states, that he never consented
*Armstrong* should pay rent to the defendant, or should be-
come his tenant, except on the supposition that *Brush* was
to purchase of him or *Sleight*.   His supposition does not
alter the fact ; (if those were his impressions at the time) he
ought to have consummated the sale before he gave his as-
sent to the change of tenancy.   *Sleight's* claiming the rent,
after the defendant's purchase at the sheriff's sale, up to a
specified period, shows an acquiescence, which amounts to
an assent on his part, presenting a case clearly excepted by
the statute, (1 *N. R. L.* 443.) and within its provisions, be-
ing an attornment with the privity and consent of the land-
lord.   At all events, it is sufficient to prevent a recovery on
the ground of tenancy.   This is, also, conclusive against
the lessor's claim under the quit-claim deed of the 13th
*September*, 1819, from *Livingston* to him, because, the pre-
mises were held adversely by the defendant, at the time, so

that nothing could pass by it.  The lessor's right to recover, therefore, depends altogether on the validity of the deed from *Cornelius Brown* to *Livingston* and *Sleight*, given in *March*, 1817.

It cannot be questioned but that *Cornelius Brown* was largely indebted at the date of the above conveyance. *Livingston* himself states, that he heard some of his creditors were pressing at the time.  The record of one of the judgments under which the defendant purchased, was filed the 9th of *July*, 1817, and the suit commenced as of the preceding *April* term.  This was almost immediately subsequent to the conveyance by *Brown*.  The circumstances that the grantees were brothers-in-law to the grantor, and that *Sleight*, one of them, does not pretend to have had any demand against him, at any time, and that they had possessed the premises for near two years, without doing any thing, throw a cloud over the transaction, and show its true character ; and the explanation given by *Livingston*, is not sufficient to change it.

If this deed had been given to *Livingston* alone, to secure the alleged debt of 300 dollars, and the existence of that debt at its date had been shown, it would present a different case; but *Sleight*, who, according to *Livingston's* testimony, had no demand against *Brown*, is made a *co-grantee*, and it cannot be pretended that an existing debt, due *Livingston* at the date of the deed, has been shown.  The period of settlement between them appears, by the date of the note given for the alleged balance, to be in *April*, 1818, long subsequent to the docketting of one of the judgments under which the defendant claims title to part of the premises, and when near two years' rent had been received, which, if specially accounted for, we must suppose would have been sufficient to pay off the amount stated to have been due at the date of the deed.  No particular statement of the accounts, as adjusted at that time, appears ; *Livingston* only declares that the note was given for 673 dollars and 66 cents, the amount of a balance due him, partly for a debt before the giving of the deed, and partly for an account accrued subsequently.  From the facts and circumstances disclosed in the case, it seems manifest that the conveyance

NEW-YORK,
May, 1822.

from *Brown* to *Livingston* and *Sleight* was without consideration, and made with an intent to hinder and delay creditors, and, of course, void by the statute of frauds.

The lessor of the plaintiff, then, if this deed is inoperative and void, can take nothing by the sheriff's deed, on the judgments and executions against *Livingston ;* nor can the deed be deemed operative, as a mortgage, because no existing debt satisfactorily appears, at the time it was given. Judgment must be entered for the defendants.