JACOB SIDENSPARKER *versus* JOHN SIDENSPARKER.

A person who is not a party or privy thereto may collaterally impeach a judgment contravening his rights, whenever it has been obtained by fraud or collusion, or when the Court rendering it had no jurisdiction, or when unlawfully entered up.

Where a judgment in a personal action, whether rendered on default or after contestation, is not liable to either of these objections, it is conclusive as to the relation of debtor and creditor between the parties and the amount of the indebtedness; and it cannot be collaterally impeached by third parties in a subsequent suit, when such relation and indebtedness are called in question.

In the trial of an action of ejectment, where the plaintiff's title depended upon the levy of an execution in favor of the plaintiff against the defendant's grantor, made subsequent to the conveyance : — *Held*,

1. That all testimony tending to show that the note constituting the foundation of the judgment satisfied by the levy, or the amount of costs in said judgment; and

2. All deeds of other land, in no wise connected with the demanded premises, given by other parties to the execution debtor, and by him to the defendant, were inadmissible.

Forbearance to collect a witnessed promissory note for the period of nineteen years will not constitute a waiver of the payee's right to satisfy a judgment founded upon said note, by a levy upon land fraudulently conveyed by the judgment debtor.

An instruction to a jury is to be regarded as an absolute rule of law only under the state of facts existing in the case and the other rulings reported and not reported, unless it otherwise appear from the instruction itself.

This Court will presume that, in other respects, proper instructions were given; and, if the party excepting desired more definite instructions, he should have made the request.

What will constitute a secret trust in a conveyance of real estate.

ON EXCEPTIONS from *Nisi Prius*, DANFORTH, J., presiding.

WRIT OF ENTRY.

The plaintiff claimed to recover a tract of land known as the homestead of George Sidensparker by virtue of a levy. That the original title was in the latter was not disputed.

The plaintiff introduced a note signed by George Sidensparker, for $162,50, payable to the plaintiff or order, on de-

mand, dated April 4, 1837. It appeared that this note was put in suit, January 6, 1856. Plaintiff introduced a copy of a judgment rendered thereon, May 20, 1858, for $370,90, debt, and $56,40, costs. In September following, that judgment was sued, another judgment rendered thereon for $471,96, debt, and $21,27, costs, execution issued March 13, 1860, which was extended on the demanded premises March 16, 1860. No question was raised as to the legality of the levy.

The defendant introduced a deed from his father, George Sidensparker, to himself, of the demanded premises, dated Nov. 16, 1852, reciting a consideration of $800; also a note, of same date, for that sum, with eleven indorsements of partial payments thereon, from Jan., 1853 to Jan. 10, 1857, when, as the defendant testified, the whole note was paid. He also testified that the several payments were made by him at the times indicated by the indorsements.

The execution and delivery of the deed and note were proved to have been made at the time of their date.

The defendant also introduced a deed of same date as the former deed, from said George to himself, of what was known as the Parkman lot, lying separate from the homestead, reciting a consideration of $600; but for which the defendant testified he paid. said George $200. The two deeds were delivered at the same time.

It also appeared that said George and the plaintiff had, for many years, owned and occupied, as tenants in common, certain other lots of land, of which they made survey and partition, and exchanged deeds thereof, Nov. 11, 1852; that they owned a saw and stave mill for many years as tenants in common, in equal shares, and carried it on together up to 1852 or '3; that the same has never been divided between them; and that said mill was in fair repair, in 1852, and did good work, but has since been suffered to run down.

It was in evidence that said George had no title to the land on which the mill stood; that it run in the spring and fall of the year; that the defendant had the use of the mill

most of the time after he took his deeds, so long as it run ; that when the plaintiff obtained judgment on his note, the mill was worthless, as a mill ; and the old iron of one-half was worth but $50.

The defendant testified that his father, George Sidensparker, had no other property than that which he conveyed to the defendant Nov. 16, 1852, except the one-half of said mill ; that his mother had none ; that neither of them had any means of support except what they got from the farm ; that his father was considerably in debt at the time, as much as $300 or $400, exclusive of the plaintiff's note.

It was in evidence that the defendant was twenty-two years of age when he took said conveyances ; that he had no other property ; that he gave no security for the $800 note ; that the family had lived together since the conveyance ; and that the father was very infirm at the time of the conveyances.

Much testimony introduced by the plaintiff tended to show that the homestead was worth $2000, and the Parkman lot $700, when conveyed to the defendant ; but the defendant's testimony tended to show that the homestead was worth but $800, and the Parkman lot but $200.

The defendant offered evidence that said George and the plaintiff had, for several years prior to the conveyance of the demanded premises to the defendant, carried on business together in lumbering, building vessels, and milling ; and that they had settlements together from time to time, and paid to each other considerable sums of money as balances ; but the evidence was objected to and excluded.

In answer to the inquiries of the plaintiff's counsel, *Otis Sidensparker* testified, that he and his brother, the defendant, bought the "Storer lot," so called, (which was in no wise connected with either of the other lots,) in January or February, 1854, and paid for it ; that defendant had no chance to cut much wood or timber other than that, except from the farm ; that they had cut a good deal of wood from that in February and March preceding ; that their father,

said George, bought it, and they, said Otis and John, paid Storer for it.  This testimony was drawn out on cross-examination with reference to the defendant's testimony previously introduced as to the means he had of earning money to pay the $800 note, in which testimony he said he got it by cutting and hauling wood and lumber principally.

The defendant's counsel inquired of said Otis, how much he and John gave for said Storer lot, which being objected to, was excluded.

The defendant offered to put in the deed from William F. Storer to George Sidensparker, dated Feb. 5, 1854, which was duly recorded; and the deed of the same from said George to the defendant and Otis Sidensparker, dated April 29, 1854, and duly recorded, which were excluded as being immaterial.

The defendant's counsel inquired of said Otis, what was the price paid for, and the value of said " Storer lot," both of which were excluded.

The defendant's counsel argued that if the consideration for the homestead was adequate and in good faith, it was immaterial whether what was paid for the Parkman lot was adequate or not, the levy not having been made on that lot, and it having been purchased and conveyed as a separate and distinct lot for another consideration.

The presiding Judge instructed the jury, that the homestead and the Parkman lot, having been conveyed at the same time, though by separate deeds, must be considered as constituting one transaction.

The jury were also instructed that they could not go behind the original judgment to inquire into the validity of the note on which it was rendered; that that judgment was a final and conclusive determination of the subject matter on which it was founded.  It was not suggested that the judgment was collusively obtained, but it appeared that there was a trial of the original action, in which the question whether the note was due, was determined by the jury,

the defendant and his father being witnesses for the defendant in that action, resisting it.

That a clear and material inadequacy of consideration was a badge of fraud.

That, if there was any secret trust or understanding, not expressed in the deed and as part of the consideration therefor, that defendant was to support his father and mother for life, or for an indefinite period of time, that would invalidate the conveyance to the defendant, as to the plaintiff, and that it would have that effect, even though not expressed in the form of an agreement, if it was so understood by the parties at the time of making the conveyance, and that understanding was a part of the consideration of the deed.

That if, in making said conveyances to defendant, said George conveyed all his property without any consideration, and did not reserve enough to pay the debts he then owed, said deeds would be void as against such prior creditors; and the demandant being such prior creditor, as appears by the note on which his judgment was obtained, the levy of his execution on the premises would give him the superior title.

The verdict was for the plaintiff and the defendant excepted.

*Gould*, for the plaintiff.

*Ruggles*, for the defendant.

The opinion of the Court was drawn by

DICKERSON, J. — Writ of entry. Demandant claims the demanded premises under a levy made thereon in his favor, March 16, 1860, as the property of George Sidensparker. The original note from George Sidensparker to the demandant, which formed the basis of the levy, was given April 4, 1837.

Tenant claims by deed from said George to him, bearing date Nov. 16, 1852; other property was conveyed to the tenant by the said George on the same day, the latter being insolvent at the time.

The liability of George Sidensparker to the demandant on the original note was determined by a jury, and there was no proof or suggestion that the judgment thereon rendered was obtained by fraud, collusion, want of jurisdiction or error in law.

The case comes before us on exceptions, by the tenant, to the rulings and instructions of the presiding Judge. The counsel for the tenant contends that the instructions, with respect to the effect of the judgment on which the levy was made, were erroneous. Upon this point the jury were instructed that it was not competent for them to go behind that judgment, to inquire into the validity of the note on which it was predicated, but that such judgment was a final and conclusive determination of the subject matter on which it was founded. In support of the exceptions to this instruction, it is suggested that the tenant was not a party nor privy to that suit, and that persons bearing such relation *alone* are concluded by the judgment.

This instruction is to be considered with reference to the fact that there had been a trial of the original cause of action, and that there was no suggestion or pretence that the judgment was obtained by fraud or collusion, or error in law. The inquiry is not whether a judgment under *any* circumstances may be impeached by one not a party or privy to the record, but whether this may be done under the particular circumstances of this case. The effect to be given to the judgments of courts of common law, and the right of a party to be secure from undue prejudice on account of a judgment which he has no power to reverse, attach a high degree of importance to this inquiry. Under what circumstances can a person impeach a judgment in a suit to which he was not a party or privy?

1. When the Court rendering it had no jurisdiction of the case. In *Webster* v. *Reed*, 11 How., 437, the Supreme Court of the United States, in an opinion reversing the judgment of the Supreme Court of the Territory of Iowa, says that, " where a judgment is brought collaterally before

the Court as evidence, it may be shown to be void upon its face for want of notice to the person against whom judgment was entered, or for fraud."

In *Downs* v. *Fuller*, 2 Met., 136, it was held that a party who has recovered judgment contrary to the statutes of Massachusetts, against a defendant who was out of the State and had no notice of the suit, and levied execution on such defendant's right to redeem real estate which had been set off on execution to another creditor, could not maintain a bill in equity against such other creditor to redeem the estate from him, on the ground that the latter was neither a party nor privy to the plaintiff's judgment, and not entitled by the rules of law to reverse it by writ of error.

In *Vose* v. *Martin*, 4 Cush., 27, the tenant, in a real action brought to recover land levied on in execution of a judgment of the Circuit Court of the United States, in favor of the demandant against a third person, to which judgment such tenant was not a party or privy, was permitted to show by proof that such judgment was erroneous and void for want of jurisdiction of the parties. In this case the Court declare the rule of law to be, that where a party's right may be collaterally affected by a judgment which for any cause is erroneous and void, and which he cannot bring a writ of error to reverse, he may, without reversing, prove it so erroneous and void, in any suit in which its validity is brought in question. *Leflin* v. *Field*, 6 Met., 287; *Leonard* v. *Bryant*, 11 Met., 370; *Thomas* v. *Hubbell*, 1 Smith, 405, (15 N. Y.)

2. A judgment may be collaterally impeached when it has been obtained by fraud or collusion.

If a party, before any cause of action has accrued to him, commencing a suit to obtain security by attachment in preference to other creditors who have causes of action already accrued, and the debtor join in the fraud, either to defend the suit, or by releasing errors, this attempt is a fraud against prior creditors who may show the fraud in evidence

to impeach the judgment thus collusively obtained. *Pierce* v. *Jackson*, 6 Mass., 242.

In *Granger* v. *Cram*, 32 Maine, 130, Chief Justice Whitman, after maintaining the conclusiveness of judgments, as between the parties, until they are reversed, says, — "when judgments are collusively procured between the parties with a view to defraud some third person, not a party thereto, the latter is not estopped to show the fraud;" and, in *Caswell* v. *Caswell*, 28 Maine, 237, which was a suit in equity brought to avoid the conveyance of land by the deceased debtor, it was held competent for the grantee of such debtor to impeach the judgment which was the foundation of the suit, by plea and proof, on the ground that it had been unlawfully obtained, and he had no right to reverse it by writ of error. *Smith* v. *Knowlton*, 11 N. H., 191; *Wingate* v. *Haywood*, 40 N. H., 437.

3. A judgment may be collaterally impeached, when erroneously or unlawfully rendered to the prejudice of the rights of a third party. A foreign administrator has no authority to institute suits at law, in another State, for the collection of any debt due to the intestate he represents, and a judgment thus obtained by him, though resulting in execution and satisfaction by levy of the same, will not debar the creditors or heirs at law of an intestate estate of the right to recover the sum due upon any demand that may have been thus recovered and satisfied by the foreign administrator. *Pond, Adm'r,* v. *Makepeace,* 2 Met., 116; *Pierce* v. *Strickland,* 26 Maine, 276.

In *Sargent* v. *Salmond*, 27 Maine, 541, it was held that when a party recovers judgment against another, on default, for a sum exceeding the amount to which he is by law entitled, such judgment, though conclusive between the parties until reversed, may be impeached by the grantee of such debtor, who was not a party to the suit, in a bill in equity brought against him by the judgment plaintiff, to compel him to convey the land of the debtor held by him in alleged fraud of the plaintiff as a prior creditor.

While it is generally true that an erroneous judgment can only be avoided by writ of error, the books abound in cases where manifest injustice would be done to parties who have no right to reverse a judgment by writ of error, unless they had the right to impeach it collaterally. Hence this rule of law has been so far relaxed in such cases as to allow parties to impeach a judgment by plea and proof, where the Court had no jurisdiction, or it had been obtained by fraud or collusion, or erroneously and unlawfully entered up.

Beyond this, the rules and principles of law do not authorize parties to proceed in the collateral impeachment of judgments; and where a judgment in a personal action is not liable to either of these objections, whether rendered on default, or after contestation, it is conclusive as to the relation of debtor and creditor between the parties, and the amount of indebtedness, and cannot be collaterally impeached by third parties in a subsequent suit, where such relation and indebtedness are called in question.

In the case at bar, the defendant seeks to invalidate a judgment, rendered after trial before a jury, where no suggestion of fraud or collusion, or want of jurisdiction, or of error in law is made. His complaint is that the jury erred in determining the question of fact. The case differs from *Sargent* v. *Salmond*, where the objection was founded upon an error *in law*, the judgment plaintiff having recovered judgment on default for double the amount he was entitled to by law. It is an attempt of a stranger to re-try an issue already determined between the parties, in accordance with the forms and principles of law, and without fraud or collusion.

To sustain the exceptions upon this branch of the case would be to undermine the foundations of the highest judicial authority, and launch at once into the ocean of uncertainty, without chart, helm or compass. It would be to grant judicial license to one who should take a conveyance from a party sued for slander, trespass, malicious prosecu-

tion, or the like, with intent to protect the property from the impending judgment, to re-try such question on the issue of the legality of the conveyance. Reason and authority forbid such procedure. Upon this point the instructions were in strict accordance with the law of the land. *Candee* v. *Lord*, 2 Comstock, 269.

The argument that, from the forbearance of the plaintiff for so long a time to enforce his rights, he must be held to have waived, or is estopped to set up his claim, is more ingenious than sound. The statute of limitations has fixed the time during which the plaintiff might bring his action against George Sidensparker, and it is scarcely necessary to add that it is not competent for the defendant, a stranger to that suit, to change that period.

The instructions with respect to a *secret trust* are to be regarded as an *absolute rule of law* only under the state of facts existing in this case, and under the other rulings reported and not reported. This Court will assume that in other respects the presiding Judge gave the proper instructions. If the tenant desired more definite instruction he should have made the customary request. In determining the correctness of this ruling, regard must be had to the evidence touching the indebtedness of the grantor, the non-payment of the full value, and the " understanding" that the father was to be supported by the son, " *as a part of the consideration of the deed.*" Whether or not this " understanding" assumed the form of an agreement is immaterial, so that at the time of the conveyance there was a reasonable expectation of the father that he should receive future support from the son, and of the son that he should furnish such support as a part of the consideration of the deed.

Nor is it material that the time, during which the support was to be furnished, be fixed and definite ; it may be for life, or a shorter period, or it may be extended indefinitely. The gist of the objection to the validity of the conveyance, in this respect, consists not in the *amount* to be paid in future

support, but in the *fact* that the promise of such support formed part of the consideration, as an inducement to the sale. In such case, the grantor essays to put his property beyond the reach of creditors, and receives therefor an inadequate present consideration with which to satisfy their claims. When this fact is established, whatever be the amount so secured from attachment, instead of entering upon the task of determining what part of the consideration was paid in money, or other property, and what part was agreed to be paid in future support of the grantor, and of holding the grantee responsible to the grantor's creditors for the latter sum, the law treats the conveyance as a nullity, as between the grantee and the grantor's creditors, and holds the property liable for their claims. Such an arrangement between grantor and grantee is a *continuing* fraud, and has been held void not only as against *precedent*, but, also, against *subsequent* creditors. *Clark* v. *French,* 23 Maine, 221; *Smith* v. *Smith,* 11 N. H., 460; *Jackson* v. *Bush,* 20 Johns., 5.

It is unnecessary for us to determine what the rule of law would be, if the *money* consideration *alone* had been adequate, or if the grantor retained sufficient property to pay his debts, as these questions are not legitimately raised by the exceptions, and as we assume that the presiding Judge gave the necessary and proper instructions upon these points. Taken in connection with the facts and other instructions contained in the bill of exceptions, and the unreported instructions, which, we are bound to assume, were given; the instructions upon the subject of *a secret trust* state the rule of law applicable to this case with sufficient accuracy, though, taken independently as abstract legal propositions, they may admit of qualification and limitation.

We have examined the exceptions with reference to the admission and exclusion of evidence upon the various points suggested by the counsel for the defendant, and, without stating the reasons for our conclusion, we think it is very

clear that the rulings of the presiding Judge in this respect afford the defendant no ground of exception.

*Exceptions overruled. — Judgment on the verdict.*

APPLETON, C. J., DAVIS, KENT, WALTON and DANFORTH, JJ., concurred.