# CHARLESTON.

HANNA *v.* CHARLESTON NATIONAL BANK AND OTHERS.

Submitted February 11, 1904.   Decided March 1, 1904.

1.  RIGHT OF APPEAL—*Surety entitled to when.*
      A surety in an execution levied on the property of the principal debtor has such interest in the controversy over the ownership of such property, to which he is a party, as to entitle him to appeal from a judgment discharging such property from the lien of such execution. (p. 187).

2.  DEED FOR FUTURE SUPPORT—*When Fraudulent in Law.*
      Among others, a deed from a father to a daughter conveying

her his property, contains the following stipulations: "The iurther consideration of this deed is that the party of the second part, shall not dispose of said property during the lifetime of the party of the first part, without the written consent of the party of the first part, and that the party of the second part will furnish to the party of the first part a comfortable and proper support and maintenance during his natural life." Such stipulation renders such deed in law *prima facie* a nullity and void as to existing creditors, and it cannot be sustained unless it is shown that the grantor retained a sufficient amount of property to satisfy his debts. (p. 190).

Error to Circuit Court, Kanawha County.

Action by Kate P. Hanna against the Charleston National Bank and others. Judgment for plaintiff, and Peter Silman brings error.

*Reversed.*

A. M. PRICHARD, for plaintiff in error.

A. B. LITTLEPAGE and FLOURNOY, PRICE & SMITH, for defendant in error.

DENT, JUDGE:

Peter Silman complains of a judgment of the circuit court of Kanawha county rendered in certain proceedings to try the right to certain personal property wherein Kate P. Hanna was plaintiff and The Charleston National Bank, plaintiff in error, Peter Silman, and George Pfeiffer were defendants. The property in controversy was levied on as the property of George Pfeiffer by virtue of an execution for the sum of $165.07 with interest and costs, in favor of the Charleston National Bank, against George Pfeiffer as principal and Peter Silman as surety. By verdict of a jury under the instructions of the court the property was found to be the property of the claimant, and judgment was rendered accordingly. Peter Silman obtained this writ of error. The defendant in error, Mrs. Hanna, claims that he has no such interest in the subject matter in controversy as entitles him to maintain this writ. He is surety for the judgment and entitled to have it made out of the property of his principal for his relief. If the property levied on was the property of his principal he was virtually interested in preventing its release and in having it applied in satisfaction of the execution. By section 138, chapter 50, Code, it is provided that: "When a joint judgment is

rendered against a principal debtor and his surety, if such surety-
ship appears to the satisfaction of the justice by any evidence
at the trial or paper filed in the cause, or by admission of the
parties, he shall note the fact on his docket, and in such case a
memorandum thereof shall be endorsed on the execution, and the
personal property of the principal debtor subject to execution,
within the jurisdiction of the officer, shall be first sold, unless
the surety direct otherwise." This section confers on the surety
the right to have his principal's property subjected to the pay-
ment of the judgment for his benefit. This right always existed
in equity under certain limitations and by this statute it is
made a matter of law. Or the surety had the right to pay the
judgment and he was then substituted to all the rights and
remedies of the judgment creditor. Now, under the statute be-
fore payment of the judgment, he has the legal right to have the
principal's property subjected to the payment of the execution.
This invests him with an appealable interest in this case, for he
has the right to have the property levied on, if the property of
the principal, applied for his benefit. The surety's right then to
maintain this writ depends entirely on the merits of the con-
troversy, and this is as to whether the property claimed by the
defendant in error was leviable on as the property of George
Pfeiffer, the principal debtor. If so, the surety has the right to
have it held and applied for his relief. The record shows affirm-
atively and clearly that if the property released from the levy
was subject thereto as the property of the principal debtor, the
surety was aggrieved by the release thereof and such grievance
does not depend on the contingency that there may probably be
other property of the debtor subject to such levy, or that the
creditor might otherwise be able to make its money out of the
principal debtor. Such contingencies are too remote to destroy
the surety's grievance occasioned by the release of the debtor's
property actually in the custody of the law for the satisfaction
of the debt. A bird in hand under such circumstances is worth
a whole flock in the dense forest of uncertain probabilities.

The first question on the merits which presents itself is
whether for any reason the conveyance under which the de-
fendant in error claims the property in controversy is void as to
the plaintiff's debt. If so, the motion of the defendant Peter
Silman, united in by the Charleston National Bank to set aside

the verdict, "and grant them , a new trial on the ground that the same was contrary to the law and the evidence," should have been sustained, and the circuit court erred in not doing so. The conveyance is as follows:

"This deed, made this 29th day of March, 1900, between George Pfeiffer, of the county of Kanawha, West Virginia, of the first part, and Mrs. Mary Catherine Hanna, daughter of the said George Pfeiffer, of the same county and state, of the second part;

"Witnesseth: That the said party of the first part, for and in consideration that the party of the first part is indebted to the party of the second part in a large sum of money for services rendered him as his house keeper during a period of several years, and for other services, and for other valuable considerations hereinafter mentioned, and that this conveyance shall operate as a release of all liability now existing on the part of the party of the first part to the party of the second part.

"Doth grant unto the party of the second part all the following real estate owned by the party of the first part situate in the said county of Kanawha and below the city of Charleston, to-wit: *First,* About twenty-three acres of land on Kanawha River bottom and between the Popp lands and the Wm. Pfeiffer twenty-three acres recently sold to John S. Payne. *Second,* About fifty acres of land conveyed to said George Pfeiffer by Henry G. Tucker and wife. *Third,* A certain lot known as lot No. 91, block 22, West Charleston. *Fourth,* One hundred acres of land known as the Stanley tract, and lying back of what is known as the Military Grant; all of which foregoing tracts of land are the same which are described in a certain deed of trust executed by said George Pfeiffer to George S. Couch, trustee, to secure certain indebtedness due to one Aaron Baer, which said deed of trust is recorded in Kanawha county court clerk's office in trust deed book No. 20, page 442, to which reference may be had for a fuller description of the property above mentioned. *Fifth,* About one hundred and fifty acres of land lying north of the county road, and being the land upon which the said George Pfeiffer now resides, the same being made up of two tracts, to-wit: One of about one hundred and forty-two acres conveyed to said George Pfeiffer by Henry G. Tucker and wife, by deed dated October 10, 1859, and recorded in said clerk's office in

book W, at page 140, and about eight acres described in a deed from Matilda Stanley and others to said George Pfeiffer, and recorded in deed book No. 32, page 627, to which two said deeds reference may be had for a fuller description of the said one hundred and fifty acres. *Sixth,* Also the following personal property now on the lands of the party of the first part, to-wit: Two horses, one grain drill, two mowers, one self-binder, one spring wagon, one farm wagon, two buggies, and all farm implements of the party of the first part. The further consideration of this deed is, that the party of the second part shall not dispose of said property during the life time of the party of the first part without the written consent of the party of the first part, and that the party of the second part will furnish to the party of the first part a comfortable and proper support and maintenance during his natural life, and it is further understood and agreed that this deed is subject to a certain deed of trust this day executed by the party of the first part in favor of F. A. Sattes.

"And the said party of the first part doth hereby covenant with the party of the second part, that he will warrant generally the property hereby conveyed:

"Witness the following signature and seal.

"George Pfeiffer,  (Seal)."

The following provision, to-wit: "The further consideration of this deed is, that the party of the second part shall not dispose of said property during the life time of the party of the first part without the written consent of the party of the first part, and that the party of the second part will furnish to the party of the first part a comfortable and proper support and maintenance during his natural life," makes this deed void as a matter of law as to existing creditors, it matters not how pure may have been the intentions and motives of the parties thereto, unless it be shown that the grantor retained a sufficient amount of property to pay all of his existing debts and this can best be established by showing that all such debts have been satisfied. In 14 Am. & En. En. Law, (2d Ed.) 246, it is stated that "a conveyance of property by an insolvent or embarrassed debtor, upon consideration of his future support by the grantee, is fraudulent and void as against existing creditors." This text is supported by a numerous array of authorities from Alabama to Ver-

mont without dissent. *Davidson* v. *Burke,* 143 Ill. 139, 36 Am.
St. Reps. 367. In note on page 375, it is said, "An agreement
for future support, while it is a valuable consideration, is not
sufficient to sustain a conveyance, when to do so will operate to
the prejudice of the grantor's existing creditors. *Harting* v.
*Jockers,* 136 Ill. 627; *Sidensparker* v. *Sidensparker,* 52 Maine
481." In the case of *Smith* v. *Smith,* 11 N. H. 459, it is said
that the grantee who accepts a deed on consideration in whole or
part for future support should see that all existing debts of the
grantor are satisfied. If the property, however, is conveyed for
full and adequate consideration, a cotemporaeous agreement for
future support of the grantor which forms no part of the con-
sideration will not render the conveyance void. 14 Am. & En.
En. Law (2d. Ed.) 246. In the present case on the face of the
deed itself, the future support is made a part of the considera-
tion thereof and it is rendered thereby *prima facie* void as a mat-
ter of law. This can only be overcome by the grantee showing
that the grantor reserved a sufficient amount of property to pay
all his existing debts, the best evidence of which as heretofore
said, is that all existing debts have been satisfied. The void
character of the deed cannot be cured by showing that the
grantee had afterwards assumed and paid debts to the full value
of the property conveyed. *Welcome* v. *Batcheler,* 23 Me. 85;
83 Am. Dec. 532. In the case of *Sidensparker* v. *Sidensparker,*
52 Me. 481, it is said: "The gist of the objection to the validity
of the conveyance in this respect, consists not in the amount
to be paid in future support, but in the fact that the promise
of such support formed part of the consideration as an induce-
ment to the sale. In such case the grantor essays to put his
property beyond the reach of his creditors and receives there-
for an inadequate present consideration with which to satisfy
their claims. When this fact is established, whatever be the
amount so secured from attachment, instead of entering upon
the task of determining what part of the consideration was
paid in money, or other property, and what part was agreed
to be paid in future support of the grantor, and of holding
the grantee responsible to the grantor's creditors for the latter
sum, the law treats the conveyance as a nullity, as between the
grantee and the grantor's creditors, and holds the property
liable for their claims, such an arrangement between grantor and

grantee is a continuing fraud, and has been held void not only as against precedent, but as against subsequent creditors. *Clark v. French,* 23 Me. 221, (139 Am. Dec. 618); *Smith* v. *Smith,* 11 N. H. 460; *Jackson* v. *Brush,* 20 Johns 5." While there may be some doubt as to whether such a deed under our recording acts would be invalid as to subsequent creditors who deal with full knowledge thereof, it is unquestionably void as to existing creditors as a matter of law without regard to the intent of the parties. The effect of it is to hinder, delay and defraud creditors and this renders it void. No debtor as against existing creditors can secure to himself the benefit of his property either in whole or part by conveying it to some one else. This being a question of actual fraud in law, section 2, chapter 74, Code, is not involved, as it applies only to unlawful preferences. Nor does the *bona fides* of Mrs. Hanna's conduct or claim affect the matter. She having accepted a deed which the law presumes void on its face as to existing creditors, she can only preserve it from their demands by paying them or showing that her father retained sufficient property to satisfy them. This renders it unnecessary to consider the instructions either of the plaintiff or the defendant. As the deed is in law *prima facie* fraudulent, neither the good or bad intent of Mrs. Hanna in accepting the same nor the *bona fides* of her debt, nor the question of unlawful preference can change the legal status thereof. She must show that her father retained sufficient property to pay the debt involved or she must pay it or allow the property levied on to be sold for its satisfaction.

The judgment of the circuit court is reversed, the verdict of the jury set aside, a new trial is awarded the defendants, and the case remanded.

*Reversed.*