## William Seymour v. Gertie Berg.

### Gen. No. 12,536.

1. WAGES—*act providing for preference to, due from insolvent estate, construed.* A judgment against the debtor, finding that the claim in question is for wages, is, even as to third parties, a sufficient and conclusive adjudication of the character and amount of such claim so as to entitle it to the lien and preference provided for by the act in question.

2. WAGES—*act providing for preference to, due from insolvent debtor, construed.* The judgment required by statute to be obtained where the claim for wages filed against the estate of the insolvent debtor has been excepted to, is a simple judgment at law; a proceeding in equity, making the creditors and others in interest parties, is not necessary.

3. WAGES—*act providing for preference to, due from insolvent debtor, construed.* The lien provided for under this act, in some circumstances, continues after the possession of the property has passed from the officer or court seizing or having possession of the same, and in such case continues until discharged, and equity may be resorted to to enforce the same.

4. JUDGMENT —*when proof of, established.* The absence of the *placita* and recitals as to the court in which a purported judgment was ren-

dered, does not affect the sufficiency of the proof made by such other offered document, where no such specific objection was interposed.

5. JUDGMENT—*how may be proved.* A judgment may be proven by a sworn copy of the judgment docket.

6. JUDICIAL NOTICE—*of what taken.* Judicial notice will be taken by courts of its own records.

7. ANSWER—*effect of admission contained in.* A party cannot upon review assert a theory which is contradicted by the admissions contained in the answer filed by him.

Bill in equity to enforce wage claim. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed June 14, 1906.

**Statement by the Court.** This appeal is from the decree of a chancellor in the Superior Court of Cook County rendered April 3, 1905, in a suit in chancery brought by the appellee as complainant against the Virginia Livery Company, Forrest O. Murdock, and the appellant, William Seymour, as defendants. The decree finds that the Virginia Livery Company, a corporation, was, on December 4, 1902, indebted to the appellee, Gertie Berg, in the sum of $885.06 for wages earned and due her as a servant; that on that date Murdock seized all the goods, chattels and property of the Virginia Livery Company, in pursuance of the terms of a chattel mortgage by said company held by him, and placed said property in the custody of the appellant, Seymour; that the business of the Virginia Livery Company was thereby suspended, and that Murdock advertised a sale of the property for December 15, 1902; that on December 6, 1902 (within ten days from the seizure of the property and suspension of business), while the property was in the hands of Seymour, who was charged with the same, the appellee, Berg, caused to be presented to Seymour, in accordance with the statute in such case made and provided, a written statement under oath, showing $885.06 due her for wages, the kind of work for which said wages were earned, and when the work was performed, and claiming a lien upon all the property of the Virginia Livery Company under the statute; that at

the date for which the sale was advertised Seymour informed Berg's agent that it had been postponed, but has failed to make answer to frequent inquiries since as to the disposition of the property; that Berg has caused demand to be made upon Seymour to sell the property and pay her the amount due her, but that he has not paid her claim, which still remains due and unpaid; that the claim of Berg against the Virginia Livery Company constituted a preferred claim and lien on the property of the Virginia Livery Company to be first paid in full, and if there were not sufficient moneys of said corporation to pay said claim, then it was to be paid from the first proceeds of the sale of its property, including that in the hands of Seymour; that by virtue of the premises and the statute, it became the duty of Seymour to pay Berg the amount of her claim within thirty days after the property came into his hands, unless proper exceptions to the claim, as provided by statute, should be filed with said Seymour as trustee or custodian, in which case it would become the duty of said Seymour, as such trustee or custodian, to require her, Berg, to reduce her claim to judgment, whereupon it should be paid; that on December 15, 1902, Murdock filed with Seymour, as custodian and trustee of the seized property, written exceptions to the claim of Berg, but that no notice was given to her of the filing of said exceptions, nor was she ever required or requested to reduce her claim to judgment until the filing of the answers of Seymour and Murdock to the original bill brought in the cause in which this decree is rendered; that upon the filing of said answers advising the complainant, Berg, of the exceptions to her claim, she brought an action at law in the Superior Court of Cook County against the Virginia Livery Company, and filed her declaration therein, setting forth her claim to $885.06 as wages earned by her as a servant; that process was duly served on the Virginia Livery Company, but no appearance made for it, and that on December 9, 1903, she recovered a judgment against the Virginia Livery Company for $885.06 and costs of suit, "being by the said court ad-

judged to her for wages earned and due to her for labor by
her performed as a servant of said defendant, the Virginia
Livery Company"; that said judgment is unpaid, and the
complainant Berg is the owner of the same; that the Vir-
ginia Livery Company is insolvent and has no property ex-
cept that placed in the hands of Seymour out of which the
judgment can be paid; that subsequent to filing her claim
with Seymour, complainant Berg caused repeated inquiries
to be made of Seymour whether any objections or ex-
ceptions had been filed to said claim, but that Seymour
failed to make any reply; that by reason of the premises
complainant was and is a preferred creditor of the Virginia
Livery Company, and was entitled to a first and prior lien
upon the property of the Virginia Livery Company in the
hands of Seymour; that thereby Seymour became by law
charged with a trust in favor of Berg in respect to said
property, and the proceeds of any sale thereof, for the pay-
ment of her said claim, and that by reason thereof it was
the duty of Seymour and Murdock to cause a fair *bona fide*
sale of said property to be made under the chattel mort-
gage on which it was seized, and to apply the first pro-
ceeds of said sale to the payment of said claim of Berg;
that, in fact, no sale was had under the advertisement
thereof made by Murdock, as aforesaid, nor was the sale ad-
journed, but that on December 16, 1902, without any no-
tice to Berg, a sale was made between Murdock and Sey-
mour, by which Murdock sold and Seymour purchased said
property for $5,000; that Seymour paid Murdock $5,000,
and retained possession of the property and continued to
use it in the general livery business; that said sale was made
subject to the rights of the complainant Berg, and was in-
effective to pass to Seymour the title to the said property
discharged of the lien in favor of Berg; that it became
thereupon the duty of Seymour to see that sufficient of the
purchase price of the property to satisfy the claim of Berg
be paid to her, but that no notice was ever given to her by
said Murdock or Seymour that said property was sold, or
that said sum of $5,000 was paid to Murdock therefor, said

sum having been received and retained by Murdock without the knowledge or consent of Berg; that the amount due Berg has been withheld from her by an unreasonable and vexatious delay of payment ever since the receipt of said sum by Murdock, which entitles her to interest on the same from the date of the judgment therefor on December 9, 1903, to the date of the decree, making the total amount due complainant Berg $942.22.

The decree therefore orders that Seymour account for, pay and turn over to complainant Berg the sum of $942.22 and costs, and have execution therefor.

In this court the appellant has assigned errors which, as far as they are argued, will be considered in the opinion following, and the appellee has assigned cross-errors, all amounting in effect to the proposition argued by her counsel, that Murdock as well as Seymour should be made personally chargeable with the amount found due to appellee Berg.

William Annan Taylor, for appellant.

Charles H. Hamill and Charles H. Pease, for appellee.

Mr. Justice Brown delivered the opinion of the court.

The decree in this cause is abstracted very fully in the preceding statement. It follows closely the allegations of the original bill and supplemental bill of the appellee, who was complainant below, and therefore no detailed statement of those pleadings is necessary. But it may be noted that the original bill filed September 23, 1903, set up the alleged indebtedness of the Virginia Livery Company to the complainant, its nature as wages, the seizure of the property by Murdock, its committal to Seymour and the statutory statement of claim by complainant to Seymour, while it denied that exceptions as provided for by statute had been filed with said Seymour to said claim. It asserted that complainant was entitled to a lien and payment, but that payment had been refused, and that by some arrangement, of which she did not know the terms,

Seymour had retained the property and was carrying on business with it. It prayed for a decree declaring a lien and requiring payment to her by the defendants, or some of them. October 23, 1903, answers were filed to this bill by Murdock and Seymour, admitting, among other things, the placing of the goods in the hands of Seymour as custodian by Murdock, and the reception by Seymour, while holding such custody, of the statement of claim describ, d by complainant, but denying that no exceptions or objections to this claim were filed, and alleging that Murdock did file exceptions with Seymour on December 15, 1902. The answers denied the indebtedness of the Virginia Livery Company to the complainant for wages, and alleged also that after the exceptions were filed it became the duty of the complainant to reduce her claim, if she had any, to judgment before she could require its payment.

The supplemental bill filed June 3, 1904, recited the original bill and averred that on November 14, 1903, the complainant Berg commenced an action at law against the Virginia Livery Company and secured judgment on it on December 9, 1903, and that before the filing of the answers of Seymour and Murdock she had no notice of the filing of exceptions to the claim.

The defendants, Murdock and Seymour, demurred to this supplemental bill. The demurrers were overruled, and then they answered, repeating the denials of their original answers and also denying that complainant had no notice of the filing of exceptions to her claim.

The evidence was taken in open court, and the decree appealed from was the result of the hearing.

The statute under which the bill and supplemental bill were filed and the decree entered is one approved June 21, 1895, entitled "An Act to amend an Act entitled 'An Act to Protect Employees and Laborers in their Claims for Wages,' approved June 15, 1887."

As the disposition of this appeal rests entirely upon the construction given this Act, we reproduce it here:

"Section 1. * * * Hereafter when the business of

any person, corporation, company or firm shall be suspended by the action of creditors, or be put into the hands of receiver or trustee, then, in all such cases, the debts owing to laborers or servants which have accrued by reason of their labor or employment, shall be considered and treated as preferred claims, and such laborers or employees shall be preferred creditors, and shall be first paid in full, and if there be not sufficient to pay them in full, the same shall be paid from the proceeds of the sale of the property seized : *Provided*, that any person interested may contest any such claim or claims, or any part thereof, by filing exceptions thereto, supported by affidavit, with the officer having the custody of such property, and thereupon the claimant shall be required to reduce his claim to judgment before some court having jurisdiction thereof, before any part thereof shall be paid.

Section 2. Any such laborer or servant desiring to enforce his or her claim for wages under this Act, shall present a statement, under oath, showing the amount due, the kind of work for which said wages are due and when performed, to the officer, person or court charged with such property, within ten (10) days after the seizure thereof on any execution or writ of attachment, or within thirty (30) days after the same may have been placed in the hands of any receiver or trustee, and thereupon it shall be the duty of the person or court receiving such statement to pay the amount of such claim or claims to the person or persons entitled thereto.

Section 3. No claims made under this Act shall be paid until after the expiration of the time in which to present such claims, and if the funds realized on the property seized be insufficient to pay the total claims presented, then such funds shall be pro-rated on such claims."

The principal contention in this case is on the effect to be given to the last clause of the first section of this Act, and to the " judgment " therein provided for when it has been obtained.

As we regard the judgment at law of December 9, 1903, recovered by appellee against the Virginia Livery Company conclusive as to the nature of the indebtedness even as against the appellant, there is no occasion for us to consider or discuss the evidence on the issue which the answers to the original and supplemental bills attempt to raise, and

which was the subject of much of the evidence on the trial, namely, the actual nature of the indebtedness of the Virginia Livery Company to the appellee.

The appellant indeed insists that the evidence of the judgment of December 9, 1903, was not competent, and if competent, was not sufficient to establish the same in this suit. This position is based on the fact that a writing read in evidence and marked as a complainant's exhibit, purporting to be (and sworn to be) a copy of a certain page of the Law Records of the Superior Court of Cook County, showing a judgment in favor of Gertie Berg v. Virginia Livery Company for $885.06, for servant's wages, entered December 9, 1903, contained in itself no *placita* nor recitals as to the court in which it was rendered, nor any certificate as to its authenticity.

The copy when in the trial court offered and identified and sworn to as compared and as correct, was not objected to on this ground specifically, but was objected to generally as incompetent and irrelevant, and as not the proof required by law to prove a judgment.

We do not think the objections made in the lower court, or the one specifically made here for the first time, well taken.

The original *præcipe*, summons and declaration from the files of the Superior Court were introduced as well as this compared copy of the judgment record, the page and book where said record appeared being specified in the offer.

A court will take judicial notice of its own records, and it would be strange if a sworn copy of a portion of such records, carefully identified, were not competent to establish collaterally the existence of such a record, no pretext of denial of the fact being made.

The only question left, in our view, is the effect of this judgment on the rights and liabilities of the appellant Seymour. Counsel for appellant argue first, that such a judgment as was obtained by the appellant against the Virginia Livery Company is not the "judgment" provided for by the statute. His argument is that nothing is said in the

statute as to the form of the action, whether it shall be at law or in chancery, or by petition, and that it does not appear who must be made parties or against whom judgment must be obtained, but that as it is a mechanic's lien statute, it comes under the decision in Cairo & Vincennes R. R. Co v. Hackney, 78 Ill. 116, where the court said all statutory liens are enforceable in equity, unless the law has provided for another mode.

We cannot concur in this view. We think in this case the law has provided another mode. The act is not in any true sense a mechanic's lien act. It is intended, like similar provisions in the national Bankrupt Act, to secure a preference for the wages of laborers and servants in cases where by reason of insolvency the business of an employing concern is suspended and its assets must be divided among creditors. The language of the statute requires merely that if the claim is objected to, the claimant must reduce his claim "to judgment before some court having jurisdiction thereof," and the very simplicity and generality of the language would seem to exclude the theory that it must be in equity, and that all the parties claiming rights in the distribution of the assets must be made defendants. The legislature can hardly be credited with this intention, which it certainly did not express. It would defeat the evident purpose of the Act if each laborer or servant having a claim for wages which, in the nature of things, might and probably would be small, should be obliged, in order to make effective his claim, to incur the expense and delay of a chancery proceeding having many parties.

The dangers to commercial credit which counsel insist are involved in a contrary construction of the statute, seem to us rather imaginary than real, but in any event his argument on this point is more appropriate for the legislature which makes the laws, than for us, who only construe them.

Undoubtedly fraud, which vitiates everything in which it is an element, would vitiate a judgment obtained under this Act. But there is no fraud shown here in the obtaining of this judgment. The mere fact that the Vir-

ginia Livery Company did not contest it, does not show fraud on the part of the plaintiff.

The evidence would seem to indicate more concealment on the part of appellant of the legal actions taken in this matter, than on the part of the appellee. If a chancery proceeding to test, in behalf of some other person than the alleged debtor, the validity of the claim for servant's wages was necessary for the preservation of the rights of such party, it would seem that after the claim and exceptions had been filed with the appellant, the initiative in such a suit might, as a matter of justice and expediency, have been as well looked for from him as from the claimant.

The Branch Appellate Court of this District decided in Western Stone Co. v. Carver, 93 Ill. App. 150, that under this statute a third party lienor has no right to appear and defend in a law suit between the wage claimant and the debtor, but it did not decide that a court of equity could not, in a case of necessity, be called on to intervene for his protection, nor do we express an opinion on this question. It is not before us.

But the appellant contends that, even on the theory that the judgment is such as is provided for by the statute, it is not conclusive or binding, nor indeed competent as evidence, against him for any other purpose than as proving its own existence. Neither Seymour nor any other person than the actual parties to the judgment are, according to this theory, as we understand it, foreclosed from disputing its amount, even, and *a fortiori* no such person is concluded as to the nature of the indebtedness on which it was founded. This theory, however, would also, like the one which we previously discussed, defeat the evident purpose of the Act. It is hard to imagine what the purpose was of requiring claims for wages formulated and presented in a prescribed manner to be paid by the person having the custody of the property of a suspended concern from its first realized assets, unless exceptions to such claims are filed by a person interested, and in that case requiring a further

method of proof of them,—if that proof is not to be held conclusive against the interested party objecting.

That in cases like those provided for by this statute, such a judgment in the absence of fraud is to be held conclusive as to its existence, its amount and its nature, against interested third parties who are not privy to it, is the doctrine of the authorities. Candee v. Lord, 2 N. Y. 269; Ledoux v. Bank of America (N. Y.), 24 App. Div. 123; Moore & Handley Hardware Co. v. Curry, 106 Ala. 284; Bensimer v. Fell, 35 West Virg. 15; Strong v. Lawrence, 58 Ia. 55; Sidensparker v. Sidensparker, 52 Me. 481; Southern Ry. Co. v. Bouknight, 17 C. C. A. 181; Bain v. Wells, 107 Ala. 562; Binder v. Finkbone, 25 Ohio St. 103; Naylor v. Mettler, 11 Atlantic Rep. 859; Conwell v. Hartsell, 16 S. W. Rep. 541.

Appellant further contends that the decree appealed from is not justified, even allowing the full force claimed by appellee for the judgment of December 9, 1903, first, because, as he says, he was not the person who, in the language of the statute, was "charged with the property," to whom the claim of the servant must be presented, nor "the officer having the custody of the property," with whom the exceptions to such claim must be left; and, second, because the statute is purely a lien statute and justifies no personal judgment in any case against any one, but, at the best, only a declaration of a lien on the property involved.

He cannot be heard to make the first of these objections to the decree. His custodianship of the property, when the claim and when the exceptions were left with him, was not in issue under the pleadings. It was admitted formally by his answer. Moreover the evidence, despite his own statement of a conclusion to the contrary, sufficiently justifies the allegations of the bills and answers.

To the second of these objections the language of the statute is a sufficient answer. Under certain conditions it becomes the duty of a person situated like Seymour to pay to the claimant the amount of such a claim as the appellant filed. These conditions, according to our view, existed in

this case. Seymour, before he made the payment to Murdock of $5,000, was under this duty. He should not have paid for the property for his personal use and retained it, without paying this claim. The statute in effect forbade it. He is therefore liable to the claimant for the amount of the claim, which was first payable out of the proceeds of the property. If the property, on the other hand, should be considered as sold to him subject to a lien for the claim, his retention and use of it as his own for a long period, and his repudiation of the claimed lien in the litigation, render him in equity properly chargeable personally with the amount of the claim.

We do not think the court erred in refusing to allow the proposed amendments to the appellant's answer. Our view of the matter heretofore expressed shows that we consider its allegations of fact immaterial and its conclusions of law unwarranted.

Nor do we think that, as alleged by the cross-errors assigned by the appellee, the decree should have included a personal judgment against Murdock.

The bills appear to have been originally filed on the theory that a lien prior to that of the seizing lienor should be declared against the chattels of which Seymour had been made custodian. When it developed that under a claim of right to do so Seymour had bought the title to them from the lienor originally making the seizure, and paid a sum intended to represent their full price, a proper and sufficient enforcement of the rights given by the statute was to compel the performance by him of the duty in it enjoined upon him of paying the wage claimant. This the decree of the Superior Court does. It is affirmed.

*Affirmed.*