ALBANY,
August, 1821.

LUDLOW
v.
HURD.

E. LUDLOW *against* HURD & SEWALL.

*W.*, having married the daughter of the plaintiff, a widow, went to reside with her, in her house, and took upon himself, with her consent, the entire management of the family, as its head. Having become insolvent, *W.* broke up his establishment, sold his carriage, discharged his servants, &c. and resigned the management of the family to the plaintiff, who, afterwards, had the sole and exclusive direction of the household, and defrayed all its expenses. The *furniture* of *W.* continued to be used in the family, as before, except the *plate*, which was packed up in boxes. The plaintiff, at the request of *W.*, lent him her notes, to a large amount, payable, at different periods, to a creditor of *W.*, and *W.* covenanted to pay the notes, when they became due; and in consideration of the notes so given, executed a bill of sale to the plaintiff of his plate and furniture in her house, the value of which was much less than the amount of the notes. There was no other delivery of the furniture and plate than what was to be inferred from the circumstances above stated: *Held*, that the possession of the furniture and plate was in the plaintiff, and that there was no circumstance that rendered the transaction fraudulent, as against creditors; but that the same was *bona fide*, and for a valuable consideration.

THIS was an action of *trespass*, &c. tried at the *New-York* sittings, in *April*, 1820, before Mr. Chief Justice *Spencer*. John *A*. *Willink* and *Daniel Willink* were partners in trade, in *New-York*, under the firm of *J*. *A*. *Willink & Co.*; and these two persons, and *Charles Latham*, composed the firm of *D*. & *J*. *A*. *Willink & Co.* at *Liverpool*. The firm of *J*. *A*. *Willink & Co.* of *New-York*, stopped payment, on the 7th of *June*, 1819, and the house of *D*. & *J*. *A*. *Willink & Co.* on the 24th of *April*, 1819; and from those periods both houses were notoriously insolvent. *D*. & *J*. *A*. *Willink & Co.* assigned all their property in trust for their creditors, who were to be paid rateably. John *A*. *Willink*, in *October*, 1817, having married the daughter of the plaintiff, a widow, went to reside with her, in her house, and, with her consent, took upon himself the management of the family, as its head, until his failure, in *June*, 1819, when he broke up his establishment, sold his carriage and horses, discharged his servants, except such as were retained by the plaintiff, and gave up to her the management and government of the family; and the plaintiff, since *July*, 1819, has had the sole and exclusive management, and kept the house. The articles of furniture in use at the time *J*. *A*. *W*. had the management, were continued in use in the same manner as before, but the *plate* was packed up in boxes, and not used at all. Since *July*, 1819, to the present time, the plaintiff has defrayed all the expenses of the household, hired and paid the servants, and provided for the support and maintenance of the family; but except in the reduction of expenses, and the plaintiff taking a more active agency, there was no visible change in the conduct

and management of the household, from *October*, 1817, until *October*, 1819, when, being in custody on civil process, *J. A. W.* removed within the limits of the gaol liberties, where he remained, until he obtained his discharge under the insolvent act, on the 5th of *January*, 1820; during which time his wife continued to reside with her mother. The name of *J. A. W.* was on the door-plate of the house, and was put there before he became the head of the family.

On the 9th of *September*, 1819, *John A. Willink* executed a bill of sale to the plaintiff for the *plate* and furniture specified in a schedule thereunto annexed, which was valued at 5,500 dollars, though no value was affixed in the schedule; the bill of sale recited, that the plaintiff had lent to him her six several promissory notes, payable, at different periods, amounting to 24,229 dollars and 33 cents, to *John M. Ehrick*, the holder of bills of exchange drawn by *J. A. Willink & Co.* on *D. & J. A. Willink & Co.*, which had been protested for non-payment, and which, with the twenty per cent damages thereon, amounted to 41,066 dollars and 66 cents. That the said notes were lent to *J. A. W.* by the plaintiff, on the express understanding, that *J. A. W.* should pay the same, as they respectively became due; and in consideration of the premises, and of one dollar, he absolutely sold and assigned and delivered to the plaintiff the said plate and furniture. *J. M. Ehrick*, in consideration of the receipt of the notes of the plaintiff, transferred to her the protested bills of exchange. There was no other delivery of the plate and furniture referred to in the bill of sale, nor any change of possession than what was to be inferred from the facts above stated.

The defendants having obtained a judgment on the 22d *October*, 1819, in this Court, in a suit commenced the 11th *August*, 1819, against J. *A. & D. Willink*, on a bill of exchange drawn by J. *A. Willink & Co.*, caused a *fieri facias* to be issued, on the 4th *November*, 1819, and levied on the plate and furniture, mentioned in the bill of sale, then in the house of the plaintiff, as above mentioned.

It appeared that the plaintiff, on the 14th *October*, 1819, had caused a judgment to be entered up, on a bond and warrant of attorney, against J. *A. W.* and in the *specification* of

the consideration of the bond, filed pursuant to the statute, the protested bills of exchange, delivered to her by *Ehrick*, were described; and, on this judgment, a *fieri facias* was issued, and delivered to the sheriff, on the 21st *October*, 1819, and which was returned by him, *nulla bona*. It was admitted that the plate and furniture, so assigned to the plaintiff, had been in her house, and in her exclusive possession, from the date of the bill of sale, so far as from the facts above stated she might be considered as in possession thereof. A verdict was taken for the plaintiff, subject to the opinion of the Court, on a case; and it was agreed, that if the Court should be of opinion that the plaintiff was entitled to recover both the plate and furniture, then the verdict was to stand; but if the Court should be of opinion that the plate and furniture were liable to the execution of the defendants, then judgment was to be rendered in their favour.

*B. Robinson*, and *D. B. Ogden*, for the plaintiff, contended, that the assignment of the plate and furniture to the plaintiff, was *bona fide*, for a valuable consideration, and accompanied with the possession. Possession of the goods by a vendor, after a sale, is only *prima facie* evidence of fraud; and where it is a mortgage, the possession of the mortgagor, being consistent with the face of the deed, it is no evidence of fraud. (*Barrow* v. *Paxton*, 5 *Johns. Rep.* 258. *Beals* v. *Guerney*, 8 *Johns. Rep.* 446. 9 *Johns. Rep.* 337. 17 *Johns. Rep.* 102.) The *bona fides* of the transaction cannot be questioned; there was as much a change of possession, as the nature of the property admitted; and, if this takes place before a creditor gets possession, it is sufficient.

*H.* and *R. Sedgwick*, contra, insisted, that the assignment to the plaintiff was fraudulent, as against creditors, and was not valid, either as a sale or a mortgage. There was no valuation of the property, which shows that it was not a sale; and there is nothing to show that the parties intended a mortgage; there is no *condition* annexed to the transfer. There was not a delivery of possession, which is essential in a mortgage, as well as in an absolute sale of a chattel. (5 *Mass. Rep.* 144. 1 *Cranch's Rep.* 309. 9 *Johns. Rep.* 337. 1 *Johns.*

*Ch. Rep.* 484. *Wordall* v. *Smith,* 1 *Campb. N. P. Rep.* 332. *Dewey* v. *Baynturn,* 6 *East.* 259. *Leonard* v. *Baker,* 1 *Maule & Selwyn Rep.* 251.)

Again ; the plaintiff, by entering up a judgment for the bills of exchange transferred to her by *Ehrick,* and issuing execution thereon, waived the bill of sale ; for she could not hold *J .A. W.* to his covenant, to pay the amount of the notes given by her to *E.* and also, for the bills of exchange. After the judgment and execution on the bills, the plaintiff could not sue him, on his covenant to pay the notes. (2 *Johns. Cases,* 195.)

SPENCER, Ch. J. delivered the opinion of the Court. The question arising in this case is, whether the sale of the plate and household furniture was *bona fide,* and upon adequate consideration ? If these questions are answered in the affirmative, the plaintiff's title will be valid. That there was a full consideration seems to me unquestionable. *J. A. Willink* chose to prefer Mr. *Ehrick,* as he lawfully might do, as to a part of his debt ; and the plaintiff, whose ability to pay the notes which she gave to *Ehrick* for $24,229 33, has not been drawn in question, became absolutely responsible to that amount. As a consideration for her liability, she received a conveyance of *Willink's* plate and furniture, valued at 5,500 dollars, and a transfer of the dishonoured bills, against a bankrupt house, amounting to 41,066 dollars and 66 cents, including the damages. If she shall be able to realise what *Willink* had stated the dividend would be, 40 per cent., she will then lose by the negotiation. I perceive nothing to impeach the *bona fides* of the transaction. It is not pretended that it was secret or clandestine, or that there was any trust between the parties ; but it is contended that *Willink* remained in possession, and that the retaining of possession by him, the sale being absolute, rendered it fraudulent. It is unnecessary to discuss the point, whether the retaining possession of chattles by the vendor. after an absolute sale of them, be, *ipse facto,* fraudulent, or only a badge of fraud, for the consideration of a jury, because here the vendor did not retain the possession. One of the ingredients of fraud, in *Twyne's* case, (3 *Co.* 81.) was, that the donor continued in possession,

and used the goods as his own, and by reason thereof, he traded and trafficked with others, and defrauded and deceived them. In *Leonard* v. *Baker*, (1 *Maule & Selw.* 254.) Mr. Justice *Bayley* very pertinently remarked, that the possession of the goods did not give any false credit in the neighbourhood, and that the assignment was perfectly notorious. The retaining possession by the vendor, is indicative, that the transaction is fictitious : first, as it is inconsistent that one shall buy goods, and not receive the possession; and, secondly, because, leaving the goods in the possession of the vendor, enables him to keep up a false credit, by inducing others to trust him, in consequence of his apparent property. It is, therefore, wise and politic to require a transfer of the possession, when goods are purchased from one in debt or in failing circumstances. I understand possession, in such a case, to be the visible control of, and dominion over, the goods sold. Here, the furniture and plate were in the plaintiff's house, and she had the entire control and management of the household. *Willink* was neither visibly, nor in judgment of law, in possession of the goods. He did not, in point of fact, intermeddle with them; and in point of law, the plaintiff's ownership of the goods drew after it the possession. Besides, the plaintiff was actually in possession of the household furniture, by using it, and she was, also, in possession of the plate, by being in possession of the house in which it was deposited. There is, then, a full and valuable consideration for the sale and transfer of the furniture and plate; and the transaction is, *bona fide*, devested of every circumstance which in *Twyne's* case, and in those which have followed, would render it fraudulent, either at common law, or under the statute.

I have considered the sale of the furniture and plate as absolute, and have applied to the case, in that view, which is most favourable to the defendants, the legal tests of such a sale. It may be that a court of equity would consider the sale as operating only as a mortgage, but it is needless to consider that point.

It has been urged, that the subsequent judgment in favour of the plaintiff, against *J. A. Willink*, was a waiver or relinquishment of the sale. I consider the judgment in

the nature of a collateral security; and that, therefore, it was no waiver of any lien which had been acquired; but if it was, the defendants' case is not any better, for the plaintiff's execution acquired priority over the defendants'.

In any view of the case, the plaintiff is entitled to judgment.

*Judgment for the plaintiff.*