Bradley, J.
The question at the trial upon the evidence was whether or not the sale of December 29, 1880, by Thomas Stoddart of his interest in the partnership property of the firm of Stoddart Brothers, to the defendant, Charles Stoddart, was made in good faith and without any intent to defraud his creditors. When a sale is not accompanied by an immediate delivery and followed by an actual and continued change of possession of the things sold, the presumption arises that it is fraudulent and void as against the creditors of the vendor and is conclusive evidence of fraud unless it shall be made to appear that it was made in good faith and without such intent, 2 R. S, 136, § 5. But if such good faith and no intent to defraud creditors, etc.. appear, the validity of the sale as to them does not require for its support any explanation or excuse for want of such delivery and continued change of possession. Mitchell v. West, 55 N. Y., 107.
It is contended on the part of the plaintiff that as against the creditors of Thomas Stoddart no title passed from him by his bill of sale to his co-partner Charles Stoddart, and many circumstances are referred to in support of his contention that no delivery and continued change of possession accompanied and followed the transaction of sale, and that the sale was not made in good faith, prominent amongst which is the fact that the vendor continued in the store apparently having the charge and management of the business, and after the new firm of Stoddart Brothers was formed, composed of Charles and James, Thomas continued in like manner, drew checks and made acceptances in the name of the firm, and in fact did not cease his apparent relation to the business at any time after the sale; that the three notes amounting to $4,700, made by Charles on account of the purchase money of the sale were at once sent by Thomas to his father John Stoddart, who resided in Canada, and that two of those notes, then with interest amounting to nearly $3,000 were given by the father to his son James, who also resided in Canada, with which and about sixty dollars added the latter paid Charles for the one-fourth interest in the property and business and entered *432 into partnership on that basis with him about ten months after the sale by Thomas to Charles. At this time James was a student in the Toronto University and gave no personal attention to the business in question. And after-wards, in September, 1883, he went to Scotland where he has since remained a medical student in the University of Edinburgh. Before he left Canada and in August, 1883, he sold his interest in the business and property of the firm composed of himself and Charles, to his father for $3,600. During all this time Charles and Thomas remained at the store in Buffalo giving attention to the business, and the latter continued his relation of clerk through the changes before mentioned in the title of the property represented by the bills of sale and articles of co-partnership.
He was advised of the combination of the lock of the safe and authorized to draw checks on the bank and make acceptances in the name of his principals. These circumstances and some others to which it is unnecessary to refer, and in view of the fact that the Champlain action was pending at the time of such sale by Thomas, were sufficient to permit the inference that the sale was not made in good faith, but for the purpose of placing his property beyond the reach of such creditor.
That sale embraced substantially all the property he had, and the notes representing the larger part of the purchase price were placed beyond the jurisdiction of the courts of this state by transfer to a near relative of the vendor. Without further explanation the motive for the sale would seem to be liable to unfavorable imputation as it may fairly be inferred that it was not made with a view to engage in any other business or employment.
This situation the defendant sought to meet by reference to the proceedings in the Champlin action, which was brought against both Thomas and Charles Stoddart to restrain them from making and selling a cosmetic known as “ Stoddart’s Peerless Liquid,” said to be composed of the same ingredients as “ Champlin’s Liquid Pearl.” And in that action the plaintiff alleged that the latter was their secret of trade, that it and their trade mark had been wrongfully appropriated and fraudulently imitated by those defendants, that the plaintiffs had sustained damages by such infringement and on account of sales already made by the defendants for the amount of which with other relief they prayed judgment. And involved in the subject of the litigation was the covenant of Thomas Stoddart, who had before been interested with Oliver H. P. Champlin in the manufac ture and sale of the “ Liquid Pearl,” that the latter should have the exclusive right to make and vend the cosmetic, and that he would not divulge the formula or recipe for making it.
This distinguished the alleged cause of action to some extent against Thomas from that against Charles. The plain *433 -tiffs applied for a temporary injunction in that action which was denied as to Charles and granted as against Thomas Stoddart, and the injunction was served on the latter December 28, 1880. The sale the next day evidently was made by Thomas of his interest in the property and business of the firm to Charles, and the purchase was made by him by reason of such restraint and to enable the latter to proceed with the business to which the injunction related unembarrassed by it. And it appears that those defendants had then incurred considerable expense to introduce the cosmetic into the market and in seeking patronage for the trade. And that the defendant James Stoddart was afterwards invited by Charles to take an interest in the business, and the relation of partner in a firm composed of him and Charles to be known as Stoddart Brothers, so that the advertising done for the purposes of the trade while Thomas and Charles constituted a firm by the same name might be utilized and the good will of the business- so secured be made available. Whatever view may be taken of these facts in other respects the referee was justified in giving them some consideration in behalf of the defense as bearing upon the purposes and motives of the parties to the sale and transfer in question, and as qualifying so far as they might the reflection upon it of the circumstances of the relation subsequently taken by James to the business. It may be observed that the defendant Thomas was wholly restrained from taking any part in the manufacture or sale of the “ Peerless Liquid,” and he could not as clerk of his brother or brothers, without violation of the injunction, have anything to do with it,- and it does not appear that he did. The referee has found that the sale by Thomas to Charles Stoddart was accompanied by an immediate actual and continued change of possession of the property sold, and was made in good faith and for a valuable consideration, and without any intent to hinder, delay or defraud the creditors of the vendor. This finding is challenged by the plaintiff’s counsel, who insists that there is no evidence to support it in either respect, and therefore the exception presents a question of law. Code Civ. Pro., § 993. Sickles v. Flanagan, 79 N. Y., 224; Porter v. Smith, 35 Hun, 118.
While mere words are not sufficient to produce a delivery and change of possession, the manner which it may be done is dependent somewhat on the character and situation of the property sold. This property consisted of an undivided interest in a stock of goods, bills receivable, accounts (if any), the balance to the credit of the firm in banks, the right of occupancy as tenant of the store building where the goods were, and the good will of the business. There does not seem to have been any inventory taken of the stock. The possession was that of the firm which each member represented. The sale by one to the other and the *434 retirement óf the former leaving the latter in the exclusive possession would be deemed a delivery and change of possession. This they sought to do by the sale evidenced by the bill of sale to that effect, and the surrender of the entire proprietorship to Charles. The latter caused the transfer of the bank balance of the firm to be made to his credit and drew his check for the cash payment of $800, and delivered his notes for the residue. These were taken in payment by Thomas, and he accepted employment as clerk from the purchaser at the agreed compensation of fifteen dollars per week and the clerk of the firm entered into the service of Charles at a stipulated rate of compensation. This is substantially all that occurred between the parties to produce a delivery of the property. But thereupon the purchaser proceeded to give appearance to the situation by having the sign over the front door so changed as to announce that he was the successor of Stoddart Brothers, the banks where they had done business were advised of the change, and information to some extent given to the houses and persons with whom the firm had dealt that Charles had become the sole proprietor. And this was in some instances announced by Thomas in the store. The contention of the plaintiff’s counsel that there was no delivery and no actual and continued change of possession is elaborately and ably discussed by him. And on that subject the question arises whether the fact that Thomas remained at the store in the assumed relation of clerk required the conclusion that there was no such delivery and continued change of possession.
All that is essential is that such delivery and possession be made and taken in good faith in such manner as the-nature and situation of the property may reasonably admit, of. Manton v. Moore, 7 D. & E., 67; Barr v. Reitz, 53 Penn. St., 256; McKibbin v. Martin, 64 id., 352. This may be accomplished by severing the goods from the control of the vendor and placing them under the control of thevendee by such acts as may produce that result. It may be this would not be done by putting a vendor in charge of the property as agent of the vendee to sell and dispose of it,, as that might be construed as practically the possession of the seller and as an attempted evasion of the statute and its. purpose. Cole v. Hill, 2 Hall, 625; Fitzgerald v. Gorham, 4 Cal., 289; S. C., 60 Am. Dec., 616. But his mere employment by the vendee as clerk in good faith to produce such, relation only, and his continuance as such merely in the business (which includes the care and sale of such property) of which the vendee has the actual control and personal management, does not require the conclusion that there had not been a delivery and an actual and continued change of possession. Ludlow v. Hurd, 19 John., 218; Jones v. O'Brien, 4 J. & S., 58. The evidence here permitted, although it did not require the conclusion, that the possession was fully surrendered to and taken by the partner *435 Charles on the sale to him by Thomas Stoddart of his interest, and actually continued in him exclusively; and that thereafter the services of Thomas in the store and about the business were merely clerical and within the authority given him by Charles without taking with it any control or possession of the goods which had been the subject of the sale.
This, however, was a question of fact upon the evidence for the referee to determine, and cannot be treated as one of law. The numerous cases cited by the plaintiff’s counsel require the adoption of no other rule as applied to the evidence given upon the trial. The circumstances required the careful scrutiny of the referee, and it was for him to determine the fact whether the form given to the transactions of sale, the employment of the plaintiff as clerk, and to the other outward appearances, was not colorable, and adopted as a scheme to cover the real relation, which was secretly designed to be continued and exist then and ultimately for the benefit of the judgment debtor. And whether in view of all those circumstances, the sale represented by the paper executed purporting to make it was made in good faith without any intent to defraud the creditors of the vendor, was certainly a question as appears by the record before us, which might have led to a conclusion the reverse of that adopted by the referee.
The omission to produce evidence within the power of the defendants (if so), which might throw some light on the transactions between the principal parties, and the fact that the notes taken by Thomas for the larger part of the purchase price, were sent out of the commonwealth to his father, and the use subsequently made of some of them, like some other circumstances, were matters for the consideration of the referee on the questions before him. The reason to which the sale is attributed on the part of. the defense, was not applicable to the disposition made of the notes, which, so far as appears, seem to have been substantially all the property he had, and it does not appear in the case what was the consideration of such transfer of them. But the question of fraud is one of fact. Archer v. Hubbell, 4 Wend., 514. And in the view taken, the question is one of the weight of evidence rather than an entire want of evidence, and therefore is not a question of law raised by exceptions to the findings of fact. Code, § 993. It is, however, for this court to examine the evidence, with a view to ascertain whether the determination of a referee is so against the weight of it as to require a new trial when it appears that the case as made contains all the evidence essential to such inquiry. But the rule is quite well settled in this court, that this cannot be done when the case fails to show that it contains all the evidence in that respect, and any evidence appears tending in some degree to support the conclusions of fact found by the referee. Then the presumption arises that *436 the evidence on the trial was sufficient for that purpose. Porter v. Smith, 35 Hun, 18; Spence v. Chambers, 39 id., 193.
We therefore neither consider the question of the weight of the evidence as presented by the case, or express any opinion upon it. The answer of the defendants, Thomas and Charles Stoddart, alleges that Thomas has received a salary as clerk at fifteen dollars per week, since the sale by him to Charles, and such is the compensation which the evidence tends to prove was agreed upon for such service. On the trial the plaintiff offered to prove that his services at the store between December 29, 1880, and the commencement of this action, if rendered by a person employed as clerk, would have been three times the value alleged in the answer. This was excluded and exception taken. The fact as such of the amount of his salary and the value of his services had no importance only as it may have had a bearing upon the mtent.of the parties to the transaction of the sale. This question is one of circumstances, to which resort may be had to ascertain whether the form given to the sale fairly represents its purpose. The offer was to prove that his services as clerk, for which his salary was fifteen dollars, were worth forty-five dollars per week. • If he was in fact a clerk, this was not material; but one question was whether that was his actual and only relation to Charles and to the business. It is said by the defendant’s counsel that while evidence tending to show that he received more than the value of his services may have had some material bearing, the fact that his salary was less than such value cannot. We think the admissibility of evidence to prove that the stipulated salary was more than the value of his services, does not necessarily render evidence that it was much less than their value, incompetent or irrelevant. While the former fact might tend to prove that he was realizing from the business something which his mere service did not warrant, the latter might have some bearing whether he had not some interest not involved in the mere contract for service which had induced him to bestow labor in value not covered by the stipulated rate of compensation. It certainly would have been competent to prove that he ássumed the apparent relation of clerk without any agreed or contemplated compensation from Charles for service. And whether he gave to the business his services wholly or partially, without compensation, the fact would seem to have relation to its bearing in degree rather than to its competency. The sale as against creditors may have been just as effectual in one case as in the other, and if made in good faith the question of the arrangement for service and of the amount of compensation are without importance; but the question involved is one of purpose of the parties to it. And the value of the excluded evidence was only in the inference derivable from it bearing upon such purpose. The fact sought to be proved *437 was collateral, but it cannot be said that it might not furnish an inference having pertinence. And in a close case upon the facts, we cannot so measure the effect or weight of excluded competent evidence, having or which may have any relation to the questions involved, as to say that no prejudice did or could result from its exclusion. Nugent v. Jacobs, 103 N. Y., 125.
The rejection of this evidence in the view taken was error. And for that reason the judgment should be reversed and a new trial granted, costs to abide the event.
Smith, P. J., concurs; Haight, J., not voting.